Motion to dismiss appeal denied June 6, motion to affirm decree denied July 18, argued on the merits September 26, modified October 27, 1922.

## RE APPLICATION OF RIGGS ET AL.

(207 Pac. 175; 207 Pac. 1005; 210 Pac. 217.)

**Appeal and Error — Service and Filing of Notice of Appeal and Filing of Transcript are Necessary Jurisdictional Steps.**

1. The service and filing of a notice of appeal and filing of a transcript of appeal are necessary successive jurisdictional steps, without which an appellate court cannot hear and determine an appeal.

**Time—Transcript Held Filed Within Thirty Days from Perfecting of Appeal.**

2. Under Section 531, Or. L., providing that the time within which an act should be done shall be computed by excluding the first day and including the last, unless the last day fall upon Sunday, etc., where an undertaking on appeal was duly served and filed April 7th, which in the absence of objections to the sureties thereon, under Section 550, became perfected five days thereafter or on April 13th, a transcript of appeal filed on May 15th was filed within the thirty days allowed by Section 554; the appellant being entitled to an extra day, since May 14th fell on Sunday.

**Appeal and Error—Supreme Court will Allow Time in Which to File Abstract After Filing of Transcript, Where Delay will not Injure Other Party.**

3. Though Section 554, Or. L., requires appellant to file a transcript, and also to file and serve on respondent a printed abstract of so much of the record as may be necessary to a full understanding of the questions presented, the Supreme Court will not affirm a decree of the lower court for failure to file an abstract, but will allow time in which to file an abstract where appellant has filed a transcript covering the whole case and a brief pointing out alleged errors, where respondent will not be injured by the delay, and where the jurisdiction of the court is not affected.

**Notice—That Proof of Publication of Irrigation District Election was Made by "Publisher" Instead of "Printer" Immaterial, When Proper Affidavit Made by County Clerk.**

4. Where under Section 7307, Or. L., the county clerk is charged with the duty of giving notice of election for organization of an irrigation district, and he performed his duty relating to the publication of the notice, and made proof by an affidavit that established that W. was both publisher and printer of a named newspaper, there was sufficient proof of publication of a lawful notice by a competent witness, and that proof of the publication of the notice was made by W. as publisher of the paper, instead of the "printer," as required by Section 833, was immaterial.

**Trial—Failure to Exclude Minute-book of Irrigation District After Admission by Consent of Parties not Error.**

5. In a proceeding involving the regularity and legality of the organization of an irrigation district, where the minute-book of the district was admitted in evidence by consent of the parties, there was no error in failing to exclude the record after cross-examination disclosed that the records were not carefully kept nor promptly entered.

**Waters and Watercourses — Election Contestants Questioning Bond Election must Plead and Prove Facts Overcoming Prima Facie Validity of Election.**

6. In a proceeding to test the legality of an irrigation district, where defendants claimed that a bond election was not a valid election, but the only answer filed by them was a general denial by Section 73, Or. L., it put in issue all the material allegations of the petition, and when petitioners proved the allegations by competent evidence, they established their cause, and it was defendants' duty, if they would overcome the *prima facie* validity of the election, to state facts which, if sustained, would either vacate the election or declare a different result.

**Evidence—Election Officers Presumed to have Acted Lawfully.**

7. All officers engaged in conducting an election are presumed to have acted in accordance with the law until the contrary shall be specifically alleged and fully proved: Section 799, subdivision 15, Or. L.

**Waters and Watercourses—Order Excluding Land from Irrigation District Invalid Where Board Without Jurisdiction.**

8. Where under Section 7341, subdivision (a), Or. L., a joint petition was filed before the board of directors to exclude lands in two counties from an irrigation district, and the notice required by subdivisions (b) and (c) was published in a newspaper in but one of the counties, the board did not obtain jurisdiction, and its action in excluding lands from the district was unlawful.

From Deschutes: T. E. J. DUFFY, Judge.

In Banc.

DENIED.

For the motion, *Mr. Harrison Allen, Mr. John R. Latourette* and *Mr. H. H. De Armond.*

*Contra, Mr. Paul C. King* and *Mr. R. S. Hamilton.*

BROWN, J.—This is a motion to dismiss an appeal in the matter of the application of J. Alvin Riggs, C. H. Hardy and J. G. McGuffie, the board of direc-

tors of Central Oregon Irrigation District, a municipal corporation, for the validation of certain proceedings and acts of the directors and district. The motion is grounded upon the alleged failure of the appellant to file his transcript within the time required by statute.

1. It is elementary that the service and filing of the notice of appeal, and the filing of the transcript on appeal, are necessary successive jurisdictional steps. Unless taken, this court cannot proceed to hear and determine the suit.

From the record, it appears that on March 29, 1922, notice of appeal was served upon respondents and filed in the Circuit Court of Deschutes County, Oregon. On April 7, 1922, the undertaking on appeal was duly served and filed, and the transcript on appeal on May 15th. No exception was taken to the sufficiency of the sureties on the appeal bond, hence the appeal became perfected five days thereafter: Section 550, Or. L.

Our statute provides that:

"The time within which an act is to be done as provided in this Code, shall be computed by excluding the first day and including the last, unless the last day fall upon Sunday, Christmas, or other nonjudicial day, in which case the last day shall also be excluded." Section 531, Or. L.

On grounds of *stare decisis,* we follow the construction of the foregoing section of the Code in so far as it applies to appeals, given in a *per curiam* opinion, where it was said:

"The method of computing time within which a notice of appeal should be served and filed may be said to have been in a state of uncertainty until the case of *United States Nat. Bank* v. *Shefler,* 77 Or. 579 (143 Pac. 51, 152 Pac. 234), in which case it was held by this court, though not without dissent, that the

day following the entry of a judgment was to be excluded in the computation of time. This rule, having been generally accepted by the profession, will be adhered to, although there are authorities holding a contrary doctrine." *In re Andersen's Estate, De Golia* v. *Andersen,* 101 Or. 94 (188 Pac. 164).

To like effect is *Vincent* v. *First Nat. Bank,* 76 Or. 579 (143 Pac. 1100, 149 Pac. 938.)

Excluding the seventh day of April, 1922, the date of service and filing of the undertaking, and the first day of the period of five days following, the time in which the adverse parties had a right to except to the sufficiency of the sureties expired on April 13th. Hence, the appeal in this cause became complete at the end of that day.

Within thirty days after an appeal has been perfected, the appellant must file with the clerk of the appellate court his transcript, and if not so filed the appeal shall be deemed abandoned, unless "the trial court or the judge thereof, or the supreme court or a justice thereof" extend the time for filing such transcript: Section 554, Or. L.

2. April 14th was the first day on which the appellants could lawfully have filed their transcript on appeal. Under the rule laid down by our statute for computing the time in which an act may be done, as construed by the decisions cited, we must exclude April 14th. By computation we find that the period of thirty days expired on Sunday, May 14th, and for that reason the appellants were entitled to an additional day in which to file their transcript.

How time shall be computed is a matter which has been litigated since the existence of the common law. In the computation of the period of time, the contest has generally been: Which day shall be included and which excluded? It would be difficult, however,

to extract any uniform rule from the diverse holdings of the courts on this question: *Hahn* v. *Dierkes,* 37 Mo. 574. It is not really important which rule is adopted, but it is of great interest to the profession in the practice of the law that uncertainty on this subject should be avoided: *Blake* v. *Crownshield,* 9 N. H. 304–307. We are familiar with all the holdings of our court upon this subject. But in the case at bar, the appellant had a right to rely upon the latest expression of this court relating to the computation of time in the matter of appeals.

It has been written that:

"Parties should not be encouraged to seek reexamination of determined principles and to speculate on a fluctuation of the law with every change in the expounders of it. As to many matters of frequent occurrence, the establishment of some certain guide is of more significance than the precise form of the rule, and substantial justice may often be better promoted by adhering to an erroneous decision than by overthrowing a rule once established." 7 R. C. L. 1000, 1001.

The motion is denied. DENIED.

---

Motion to affirm decree denied July 18, 1922.

ON MOTION TO AFFIRM DECREE.

(207 Pac. 1005.)

*Mr. Harrison Allen, Mr. John R. Latourette* and *Mr. H. H. De Armond,* for the motion.

*Mr. Paul C. King* and *Mr. R. S. Hamilton, contra.*

McCOURT, J.—This is a proceeding brought by the members of the board of directors of Central Oregon Irrigation District and by the district, to secure a

judgment of confirmation of certain proceedings of the said board and of the said district, providing for and authorizing the issue and sale of the bonds of the district. A number of land owners within the district, for themselves and all other similarly situated whose lands were attempted to be excluded from the district by order of the board of directors, dated the tenth day of November, 1921, have appealed from the decree of the Circuit Court, validating and confirming the proceedings for the organization of the district and authorizing the issue and sale of bonds of the district.

The petitioners have interposed a motion for an order affirming a decree of the Circuit Court based upon the failure of the defendants to serve and file upon respondent a printed abstract of so much of the record as may be necessary to a full understanding of the questions presented for decision, as required by rules 6 and 11 of the Supreme Court: 100 Or. 744, 747 (202 Pac. xiii, 173 Pac. ix).

The defendants filed in this court on May 15, 1922, a transcript consisting of the judgment-roll in the Circuit Court, made up of all of the original pleadings and orders therein, and a transcript of the evidence introduced upon the hearing in the Circuit Court and all the original exhibits introduced in the cause, save and except those for which copies were substituted under the order of the court. The defendants did not file a printed abstract of record nor any assignment of errors, but on June 12, 1922, they filed their printed brief, which points out the alleged material defects in the record of the proceedings conducted by the petitioners, as shown by the record.

Defendants have filed a motion for leave to file a printed abstract, in which they propose to incorporate a formal assignment of errors, together with

so much of the record as may be necessary to a full understanding of the questions presented for decision, and assert that their failure to file a printed abstract in the first instance was due to a misconstruction placed upon Section 554, Or. L., by the attorneys for defendants. They aver in substance that they construed Section 554, Or. L., as requiring a transcript or a printed abstract, but not both, and that inasmuch as the entire record had been brought to this court, a printed abstract would not be required. This court acquired jurisdiction of the cause upon the filing of the transcript.

In the case of *Fleischner* v. *Bank of McMinnville,* 36 Or. 553 (54 Pac. 884), the court said:

"But the question presented is not jurisdictional, and the abstract being required in certain form, and containing certain matter for the benefit and assistance of the court, and to relieve it as much as possible from the labor of searching in many instances through cumbersome records, and to enable it to ascertain at a glance the errors relied upon, it may, under certain contingencies, be excused entirely, or the court may dismiss the cause for nonobservance of requirements touching it. Nevertheless all parties who can reasonably comply with the rules governing its preparation and service should be required to conform to them."

The court has in several instances allowed parties to amend a printed abstract by adding thereto assignments of error where respondent has not been affected by the omission and to incorporate therein similar assignments of error, it appearing that the omission was due to the inadvertence or excusable mistake of appellant: *Salene* v. *Isherwood,* 74 Or. 35, 40 (144 Pac. 1175); *Skinner's Will,* 40 Or. 571, 575 (62 Pac. 523, 67 Pac. 951); *Robinson* v. *Phegley,*

93 Or. 299, 303 (177 Pac. 942, 178 Pac. 799, 182 Pac. 373).

3. The failure of the defendants in this case to file a printed abstract and assignments of error has not materially delayed or injured the petitioner, and in view of the character of the proceeding, we think it would not be in the interests of justice to affirm the decree upon account of the omission to observe a rule of procedure not going to the jurisdiction of the court and not affecting the merits of the proceeding.

The motion to affirm the decree is denied and the motion for leave to file the printed abstract is allowed. The printed abstract shall be served and filed on or before the first day of August, 1922, and respondents shall have to and including the twentieth day of August, 1922, within which to serve and file their brief herein.                    MOTION DENIED.

### ON THE MERITS.

This is a proceeding by J. Alvin Riggs, C. H. Hardy and J. G. McGuffie, the board of directors of Central Oregon Irrigation District, a municipal corporation instituted for the purpose of securing a judgment of confirmation of the organization of the district as such corporation and of subsequent proceedings of the district and acts of the board of directors thereof from the date of its organization to the date of filing its petition for such judicial examination and judgment of confirmation of the court. This application is made pursuant to the provisions of Chapter 390, General Laws of Oregon, 1919, designated in Oregon Laws, Sections 7358, 7359 and 7360.

The defendants, W. C. Moore, R. L. Miller, A. F. Hauser, J. E. Teater and E. M. Eby, acting for themselves and for others similarly situated, appeared and filed an answer consisting of a general denial. A

trial was had, and the court, based upon its findings of fact and conclusions of law, decreed that all of the proceedings in connection with the organization of the Central Oregon Irrigation District had before the County Court of Deschutes County, Oregon, and the election held under its direction for the organization of the district were, in all respects, regular and legal, "and all thereof are hereby confirmed"; that the elections held by the Central Oregon Irrigation District for the selection of directors were valid, and that the acts of the board in connection therewith were regular and were confirmed; that the board of directors were by election authorized to issue bonds of the district in the sum of $180,000; that the acts of the board in excluding certain lands from the district were valid as to lands situate in Deschutes County, but invalid as to lands situate in Crook County, Oregon.

The defendants appealing assign error of the court in excluding certain proffered evidence as inadmissible under a general denial, and in finding that proper notice had been given of an election on organization of the district; in refusing to strike the minute-book from the evidence; in holding that the bond election was valid and that the bonds were legal obligations of the district; in holding that the exclusion of certain lands from the district was regular, and in holding that all of the acts of the Central Oregon Irrigation District and of its board of directors were regular, legal and valid.          Modified.

For appellants there was a brief over the names of *Mr. R. S. Hamilton* and *Mr. Paul C. King*, with an oral argument by *Mr. Hamilton*.

For respondents there was a brief and oral arguents by *Mr. H. H. DeArmond, Mr. John R. Latourette* and *Mr. Harrison Allen.*

BROWN, J.—The board of directors of this district are authorized by law to commence special proceedings for validation—

"in the Circuit Court of the county in which the office of such district is located, for the purpose of having a judicial examination and judgment of the court as to the regularity and legality of the proceedings in connection with the organization of the district, and the proceedings of said board and of said district, providing for and authorizing the issue and sale of the bonds of said district, whether said bonds, or any of them, have or have not been sold or disposed of; and for the purpose of having a judicial examination and judgment as to the regularity and legality of any action or proceeding of the County Court declaring the organization of any irrigation district * * , or declaring the result of any election therein, or after the board of directors of an irrigation district * * has made an order including or excluding any lands in or from said district, or declaring the result of any election, general or special, or after any order of such board levying any assessment, general or special, or ordering the issue of any bonds for any purpose, or after the order determining any bond issue, or providing for the same * * . All the proceedings of an irrigation district * * may be judicially examined and determined by the court in one special proceeding, or any part thereof may be separately examined and determined upon by the court, and no bond issue, or any part thereof, shall hereafter be sold or offered for sale unless the same shall have been confirmed under the provisions of this section." Section 7358, Or. L.

It is further provided that—

"Said proceedings shall be in the nature of a proceeding *in rem,* and the practice and procedure therein

shall follow the practice and procedure of suits in equity, so far as the same shall be consistent with the determination sought to be obtained, except as herein provided.'' Section 7359, Or. L.

Under the provisions of the above section, jurisdiction of the irrigation district is obtained by publication of a notice required to be served on all interested parties, at least once a week for three successive weeks, in a newspaper of general circulation published in the county where the proceeding is pending and in each county where the lands involved are situate, but such jurisdiction is not complete until the expiration of ten days following the last publication of such notice. This notice shall be directed to ''all freeholders, legal voters, and assessment payers within said district.'' Any interested person may appear at any time before the expiration of the ten days following the publication for the purpose of contesting the validity of the proceeding or any of the acts sought to be confirmed. The act calls for a speedy determination of the proceedings, and further provides that—

''The court, in inquiring into the regularity, legality or correctness of any of said proceedings, must disregard any error, irregularity or omission which does not affect the substantial rights of the parties to said special proceedings, and may approve the proceedings in part and disapprove and declare illegal or invalid other or subsequent proceedings in part.''

The Central Oregon Irrigation District was organized under the terms of Chapter 357, Laws of Oregon, 1917 (see Sections 7305–7352, Or. L.). It is disclosed by the record that on September 17, 1917, a petition was filed with the County Court of Deschutes County, Oregon, for the purpose of organizing an irrigation

district within the counties of Deschutes and Crook, to bear the name of Central Oregon Irrigation District, and embracing within its boundaries the lands included within the Central Oregon Irrigation Company's Carey Act segregation in said counties, including such lands only as were at that date sold or contracted to settlers. The petition was signed by more than the requisite number of *bona fide* owners of land, together with holders of contracts with the Central Oregon Irrigation Company for the purchase of a water right from that company.

It appears from the petition that all of the lands included within the proposed district were susceptible of irrigation from and through, and were entitled to a water right in, the irrigation system of the Central Oregon Irrigation Company. Prior to its presentation to the County Court, the petition, with notice thereof, was published once a week for four consecutive weeks, in the same time and manner, in newspapers published in Deschutes and Crook Counties, Oregon, where the lands involved were situate; and thereafter, upon presenting the petition to the County Court of Deschutes County, the petitioners filed therein their statutory bond, which was approved by that court. Upon consideration and after a complete hearing, the court found and determined that the petition contained the necessary number of signatures; that it was accompanied by due proof of notice of publication, as required by law. Thereupon, on the final hearing, the court established and defined the boundaries of the proposed district, designated the name of the district, established a convenient number of election precincts and defined the boundaries of such precincts, and made and entered an order calling an election within the proposed Central Oregon Irrigation District for the purpose of determining

whether or not the same should be organized as an irrigation district; "and said order as so made and entered shall be conclusive evidence of the facts found by the court, subject to an appeal to the Circuit Court within ten days from the entry of such order." Section 7306, Or. L.

No appeal has ever been taken. In fact, the record thus far appears without a flaw.

The record shows that the clerk complied with the provisions of Section 3, Chapter 357, Laws of 1917 (Section 7307, Or. L.), which reads, in part:

"The county clerk shall forthwith give notice of an election to be held in such proposed district for the purpose of determining whether or not the same shall be organized under the provisions of this act. Such notice shall describe the boundaries so established and shall designate the name of such proposed district and shall be published once each week for at least four consecutive weeks prior to such election, in a newspaper published within said county; and if any portion of said district lies within another county or counties, then said notice shall be published in a newspaper published within each of such counties in the same time and manner * * ."

A directory, and not a jurisdictional, requirement of the statute provides for the mailing by the clerk of a copy of such notice, by registered mail, to each landowner not joining in the petition, in so far as names and addresses of such owners can be reasonably ascertained. In accordance with this provision, the clerk notified all landowners of the district of the election, so far as their addresses were known or could be ascertained.

Excepting as to the form of ballots and the nomination of candidates, the general election laws of the state shall apply to all elections held in accordance

with the irrigation district laws: Section 4, Chapter 357, Laws of 1917 (Section 7308, Or. L.).

The notices of election were given by the county clerk of Deschutes County, by publication in certain newspapers of general circulation published in Deschutes and Crook Counties, for four successive weeks prior to the holding of the election. These notices stated the time and place of holding the election, described the boundaries of the proposed district, designated the name thereof, and provided for the casting of ballots by the electors who voted, containing the statutory words, "Irrigation District —— Yes," and "Irrigation District —— No." In accordance with the notice, the election was held on December 17, 1917, as provided by the statute, and the question of the formation of the district was there submitted to the legal voters residing therein. On December 24, 1917, the County Court of Deschutes County, upon canvassing the votes cast thereat, found 193 votes to be in favor of the organization of the irrigation district and 81 votes against such organization, three fifths of all votes cast on the question being in favor of the organization of the district. The court then entered an order declaring such territory duly organized as an irrigation district under the name of "Central Oregon Irrigation District," and declaring the three persons receiving the highest number of votes respectively for director to have been duly elected to such office. Thereupon, the court caused a copy of its order, duly certified, to be filed for record in the office of the recorder of conveyances of each county in which the lands were situate, and forwarded a copy thereof to the clerks of the County Courts of Deschutes and Crook Counties.

The record discloses that more than ten days preceding the holding of the election for the organization

of the district, James G. McGuffie, J. Alton Thompson, J. Alvin Riggs and others were nominated for the office of director of the proposed Central Oregon Irrigation District; that on the twenty-fourth day of December, 1917, the ballots cast for the office of director were duly canvassed by the County Court of Deschutes County and the court found that the three persons named were the nominees receiving the highest number of votes and declared them elected as such directors. Thereafter, they determined by lot the term which each should serve and duly qualified for the terms ending the first Tuesday in February, 1919, 1920 and 1921, respectively. Following the election, each director qualified by taking the oath of office prescribed by law and filed his official undertaking, which was duly approved by the county judge of Deschutes County. They then organized as the board of directors of Central Oregon Irrigation District, and at once entered upon the discharge of their duties as such. On the second Tuesday in January, 1919, a regular election was held to elect a director to succeed James G. McGuffie, whose term expired on the first Tuesday in February, 1919, at which he was elected to succeed himself, for, a period of three years. Thereafter, C. H. Hardy was regularly elected for a like term, beginning on the first Tuesday in February, 1920, and on the second Tuesday in January, 1921, J. Alvin Riggs was elected director to succeed himself.

4. Now, returning to the district organization election: The statute provides for an election contest by any person owning property liable to assessment within the district. "Such contest must be brought within sixty days after the canvass of the votes and declaration of the result." Section 7337, Or. L. The

105 Or.—35

result of the organization of the irrigation district was announced on December 24, 1917. The board of directors assumed their duties and the irrigation district functioned as such. It incurred obligations, yet no voice was raised against the regularity of its organization until this proceeding was instituted, when it was asserted for the first time that the district was not lawfully organized for the reason that proof of the publication of the notice of election was insufficient, in this: that the affidavit of proof of publication was made by the "publisher" instead of the "printer."

The notice is full and complete. It was published in Crook and Deschutes Counties. It gave notice to all that an election would be had and held on December 17, 1917, for the purpose of determining whether or not Central Oregon Irrigation District should be organized under the provisions of Chapter 357, Laws of Oregon, 1917. It described the boundaries of the proposed district as determined by the County Court, together with the lands excepted therefrom. It afforded information of the division of the district into six election precincts, with the boundaries of each. It instructed the electors in the manner of casting their ballots, both upon the question of the organization of the irrigation district and in voting for candidates for directors. It named the voting places and stated that the polls would be open at the hour of 8 A. M. and continue open until 8 P. M.

There is no question about the sufficiency of the notice or its publication in each county, but it is asserted that there is a defect in the affidavit proving its publication in Deschutes County. The affidavit reads:

"Bend, Oregon, Dec. 24, 1917.
"State of Oregon,
"County of Deschutes,—ss.

"I, A. Whisnant, being first duly sworn, say that I am the *publisher* of 'The Bend Press'; that said newspaper is published and issued weekly and regularly at Bend, in Deschutes County, State of Oregon, and is of general circulation in the county and the state; that the notice, of which the one hereto attached is a true and correct copy, was published in said paper once a week for four weeks, being published five times, on the following dates: November 16, 1917; November 23, 1917; November 30, 1917; December 7, 1917; December 14, 1917; that the said notice was published in the regular and entire issue of every number of that paper during said period and time of publication; and that the said notice was published in the newspaper proper and not in a supplement.

"A. WHISNANT.

"Subscribed and sworn to before me this 24th day of December, 1917.

"H. H. DEARMOND,
"Notary Public of Oregon.

"My commission expires Jan. 1, 1921."

This proof of publication is assailed upon the ground that it fails to conform with Section 833, Or. L., reading:

"Proof of the publication of a document or notice required by law, or by an order of court or a judge, to be published in a newspaper, may be made by the affidavit of the *printer* of the newspaper, or his foreman or principal clerk, annexed to a copy of the document or notice, specifying the times when and the paper in which the publication was made * *."

Counsel also cite as supporting their contention *Jeffery* v. *Smith*, 63 Or. 514, 519 (128 Pac. 822). In that case this court held:

"Whenever the title to property is undertaken to be divested by proceedings *in invitum*, the statute au-

thorizing the deraignment is usually construed strictly * * "

and that proof of publication made by "the foreman of the 'Evening Telegram,' a daily newspaper of general circulation published in the City of Portland," was insufficient as against proper objection.

In the case of *William Hanley Co.* v. *Harney Valley Irr. Dist.*, 93 Or., 78 (180 Pac. 724, 182 Pac. 559), an affidavit of publication made by the foreman of the "Harney County Tribune" was held insufficient to confer jurisdiction upon the County Court to consider a petition for the formation of an irrigation district.

Upon the record before us, these cases are not controlling.

Under Section 7307, Or. L., the county clerk is charged with the duty of giving notice of the organization election. He performed his statutory duties relating to the publication of such notice and made proof thereof by filing an affidavit. This affidavit clearly establishes that A. Whisnant was both "publisher" and "printer" of "The Bend Press." We not only have the proof of publication of a lawful notice, but that proof is made by a competent witness. The law is satisfied.

5. The defendants assert error because of the court's ruling in refusing to strike from the record the minute-book of the irrigation district which was marked for the purpose of identification Exhibit "N" and received in evidence. McGuffie testified that he held the position of secretary of Central Oregon Irrigation District and had been such officer since the organization of the board of directors. The record discloses the following:

"Q. I will hand you pages 23, 24, 25, 26 and 27 of the minute-book of the Central Oregon Irrigation

District, and ask you to state what that purports to be. Is that a part of the minutes of the Central Oregon Irrigation District?

"A. It is the minutes of the meeting of the board of directors of the Central Oregon Irrigation District held in Redmond on the thirteenth day of December, 1918.

"Q. These minutes were * * taken by you and under your directions?

"A. Yes, sir.

"Q. We offer in evidence pages 23, 24, 25, 26 and 27 of the minutes of the board of directors of the Central Oregon Irrigation District. Upon agreement with counsel, if it is satisfactory to the court, we will offer all of the minutes of the board of directors of the Central Oregon Irrigation District from the date of its organization, or the date of its first board meeting, until the present time, with the understanding that we will only use that part which is pertinent to the issues that are attempted to be validated here, which we will point out to the court. It simply saves time at this part of the proceedings and will probably save time all the way through. If that is agreeable to the court, we will make the offer.

"The Court: You are going to submit the volume you have there, the book?

"Mr. DeArmond: Yes.

"The Court: It will require considerable copying of a lot of those immaterial matters. If you desire to do that, it will be all right with the court. * * It will be all in evidence. There is no particular objection, except that it does encumber the records. * * If it is agreeable to counsel and you have no objections to the whole volume going in.

"Mr. King (of Counsel for Defendants): No, we would like that."

From the foregoing, it is plainly apparent that the record-book of the proceedings of the municipal corporation came into the record with the approval of all parties to this litigation. Later in the proceedings counsel for defendant cross-examined the secretary

as to his method of keeping the records of the meetings of the board of directors, and from this examination we conclude that the records were not carefully kept nor were they promptly entered. Notwithstanding this, the court did not err in failing to exclude the record, after its admission with the consent of the petitioners and the defendants, by their counsel.

Relating to the subject of municipal records as evidence, a text-writer says that—

"Municipal records properly authenticated or verified are competent evidence of the corporate proceedings of the legislative or governing body and of the transactions of officers and boards connected with the local government. Records imperatively required by law, made by the proper officers, are conclusive of the facts therein stated, not only upon the corporation, but upon all of the world as long as they stand as records. Their accuracy can be contradicted or impeached only in proceedings instituted directly for the purpose, and to the end that the record may be corrected. So long as they are in existence and can be produced they are the only competent evidence of the acts of the corporation. If they are destroyed or lost secondary evidence may be received to prove them. * * The original minutes or records constitute the primary evidence of the facts recited therein * * ." Section 621, 2 McQuillin, Municipal Corporations.

6. On October 5, 1921, the board of directors, at a regular meeting, ordered the calling of a special election, to be held on November 12, 1921, within the district,

"to determine whether or not bonds of said district in the sum of $180,000 shall be issued for the purpose of providing funds necessary for the replacement of the main flume of the Central Oregon Canal and for the replacement of the various structures necessary to be replaced on the various canals and laterals of the entire system, and for all necessary repair work

to be done in order to operate the system; to provide funds for the operation of the irrigation system during the year 1922 and to provide funds for the payment of the first year's interest on such bonds."

These bonds, if issued by the board of directors, will be legal and binding obligations of the district and the funds derived therefrom shall be expended for the purposes above enumerated, and for no other. From the record before us, the election was regularly held in accordance with provisions of the statute governing such elections, and upon canvassing the vote thereat it was found that 153 votes were cast in favor of the issuance of bonds and 23 votes against the issuance thereof. Thereupon, the board made and entered an order declaring that the bond issue was carried and that all of the proceedings in connection with the holding of the election were regular.

The defendants argue that the bond election above referred to was not a valid election. The only answer filed by them in these proceedings was a general denial. There is no averment of the rejection of any vote, upon which to predicate a holding that any elector was refused his privilege of casting his ballot. The general denial put in issue all of the material allegations contained in the petition: Section 73, Or. L. When the petitioners proved these material allegations by competent evidence, they established their cause. It is the duty of the defendants, if they would overcome the *prima facie* validity of the election, to state plainly facts which, if sustained by proof, would render it the duty of the court either to vacate the election or declare the result to have been otherwise: 20 C. J. 231. In *Links* v. *Anderson*, 86 Or. 508, 520, 521 (168 Pac. 605, 1182), complaint was made that the election was invalid because the election officers closed the polls at 5 P. M.

instead of 8 P. M., as provided by statute. The court said:

"This, however, is directory only and avails nothing unless it can be shown that some elector was thereby deprived of the right to vote and that the number thus excluded was sufficient to change the result."

In a much cited case the court said, in the matter of pleading in an election contest, that it

"should be a thing, complete and perfect in itself, setting forth precise allegations, and containing all necessary statements to show that if such allegations and statements were true, the election of the returned candidate must of course be vacated. * * It is not unreasonable to say there should be a plain, precise, accurate, distinct statement of the alleged frauds, but that it should be averred with equal precision, that those frauds had a material bearing upon the election, *and necessarily would have changed the result.*" *Carpenter's Case,* 2 Pars. Eq. Cas. (Pa.) 537, 540, 544.

The pleading "must state facts to show that the result of the election was affected by the illegality or errors charged." 7 Ency. of Plead. & Prac. 385.

See, also, *Whitney* v. *Blackburn,* 17 Or. 564 (21 Pac. 874); *Tazwell* v. *Davis,* 64 Or. 325 (130 Pac. 400); *Carpenter's Case,* 2 Pars. Eq. Cas. (Pa.) 537, 540, 544; *Kneass' Case,* 2 Pars. Eq. Cas. (Pa.) 533; *Thompson* v. *Ewing,* 1 Brewst. (Pa.) 68; *Mann* v. *Cassidy,* Brightly Elec. Cas. 351; *Skerrett's Case,* Brightly L. C. E. 320, 2 Pars. Eq. Cas. (Pa.) 509.

7. A well-settled general rule is that all officers engaged in conducting an election are presumed to have acted in accordance with the law, until the contrary shall be specifically alleged and fully proved: Subd. 15, § 799, Or. L.; *Loomis* v. *Jackson,* 6 W. Va. 613.

"It may therefore be safely affirmed, that no irregularity, or even misconduct, on the part of the election officers * * will vitiate an otherwise legal election, unless the result thereof has been thereby changed, or rendered so uncertain as to make it impossible to ascertain the true result. A different rule would make the manner of performing a public duty more important than the duty itself. * * Nothing can be proved that is not alleged." *Loomis* v. *Jackson, supra;* at p. 692.

In *Lowrey* v. *Cheatham,* 131 Ga. 320, 322 (62 S. E. 226), the court said:

"However reprehensible the conduct charged against the registrars and the officials referred to. * * it will not have the effect to vitiate the election, nor will it have the effect of changing the result, unless it be clearly shown * * that the votes would have changed the result of the election."

From another valuable decision we carve the following:

"But it is not alleged in what manner it affected the result, neither is it averred that the irregularities changed the result of the election." *Janeway* v. *Duluth,* 65 Minn. 292 (68 N. W. 24)..

All power vested in this court is derived from the law, and if defendants would receive redress for their grievances they must bring themselves within its embrace. There is nothing in the record to overcome the *prima facie* proof of a valid election.

8. The validity of the action of the board of directors in excluding several thousand acres of land is questioned. Without affecting its organization or discharging its obligations, the boundaries of an irrigation district may be changed by the exclusion of lands therefrom, by an order made by the board of directors of such district after obtaining jurisdiction

of the subject matter by petition and publication of notice thereof.

"The owner or owners in fee of one or more tracts of land, or the holders of an uncompleted title to government or state lands which constitute a portion of an irrigation district, may *jointly or severally* file with the board of directors of the district a petition, praying that such tract or tracts, and any other tracts contiguous thereto, may be excluded and taken from said district. The petition shall state the grounds and reasons upon which it is claimed that such lands be excluded * * ." Subd. (a), § 7341, Or. L.

In the case at issue, the petition for exclusion contained a description of lands situate in Deschutes and Crook Counties. Before the board of directors could obtain jurisdiction to grant a hearing upon the petition, it was necessary, upon the filing thereof, for the secretary of the board of directors to cause a notice of the filing of such petition to be published once a week for at least two weeks in a newspaper published in Deschutes County, and the same notice to be published for a like period of time in a newspaper published in Crook County, Oregon.

"The notice shall state the filing of the petition, the names of the petitioners, a description of the lands mentioned in said petition, and the prayers of said petitioners, and it shall notify all persons interested in, or who may be affected by, such change of the boundaries of the district, to appear at the office of said board at a time named in said notice, and show cause in writing, if any they have, why the change in the boundaries of said district, as proposed in said petition, should not be made." Subd. (b), § 7341, Or. L.

The time specified in the secretary's notice for all interested persons to show cause shall be at the first regular meeting of the board following the expiration

of the time for the publication of the notice: Subd.
(b), § 7341, Or. L.  At the place and the time speci-
fied in the notice, or at an adjourned meeting, the
board of directors shall hear the evidence adduced
on behalf of the petitioners, and in support of the
objections thereto: Subd. (c), § 7341, Or. L.  It is
provided in this paragraph that,—

"The failure of any person interested in said dis-
trict * * to show cause, in writing, why the tract or
tracts of land mentioned in said petition should not
be excluded from said district, shall be deemed and
taken as an assent by him to the exclusion of said
tract or tracts of land, or any part thereof, from
said district."

A petition signed by numerous good-faith land
owners within the Central Oregon Irrigation District
was filed on the twentieth day of October, 1921, with
the board of directors of Central Oregon Irrigation
District, praying that the board make an order ex-
cluding from the district all of the lands described
therein.  Thereupon, a notice of the filing of the
petition, containing the names of the petitioners, to-
gether with the description of their lands which they
were seeking to have excluded from the district, was
published in the "Redmond Spokesman," a weekly
newspaper of general circulation, published at Red-
mond, Deschutes County, Oregon, for the requisite
time prior to the day fixed for a hearing thereon.
Some of the lands described in the petition and in the
notice were situate in Crook County, but no publica-
tion of such notice was had in that county.

We have seen that the petition for the exclusion of
lands from an irrigation district may be joint or sev-
eral.

"The term 'joint' is thus defined: united; com-
bined; undivided."  Black's Law Dictionary.

In this case, the petition for the exclusion of lands from the Central Oregon Irrigation District was the joint application of more than 200 holders in fee, or of an uncompleted title to government or state lands situate in two counties. It was addressed to the board of directors of that irrigation district and prayed, in part:

" * * That all of the lands set forth and described in detail by lots and boundaries in Exhibit 'A' hereto attached and made a part of this petition be excluded and separated from the Central Oregon Irrigation District for the following reasons: That all of the lands owned by your petitioners * * and described by Exhibit 'A' * * derive their waters from * * the Pilot Butte Canal within said district; that all other lands in said * * district derive their waters from * * the Central Oregon Canal * * ; the lands described in Exhibit 'A' * * irrigated by the waters from the Pilot Butte Canal * * constitute a logically separate unit * * ; that lying between land irrigated by the Central Oregon Canal and the lands irrigated from waters derived from the Pilot Butte Canal * * there is a vast tract of unreclaimed land amounting to 35,000 acres; * * that all of the lands herein petitioned to be excluded * * cannot be irrigated from, or are not susceptible to be directly benefited by, the actual irrigation of the same from a common source with any of the other lands in said irrigation district."

Many signers of the petition withdrew their names before the same came on for hearing. A. E. Doty addressed the board in writing:

"I signed a petition for exclusion of my land from the district, but after thinking the matter over and after fully understanding the situation I have changed my mind and respectfully ask that you strike my name from the said petition."

As further illustrative is the following:

"We, the undersigned, request that our names be taken from the list of those petitioning for withdrawal from the district.

"DELMER F. LADD.
"D. H. GATES.
"E. A. GATES."

"I respectfully ask that our names be withdrawn from the petition that we filed to withdraw from the district, as after reconsidering we have decided that withdrawal is not best for all concerned.

"MR. and MRS C. E. PARKS."

Many more similar requests were made.

Numerous remonstrances and protests were made by other land owners of the district. For example, Jesse Stearns alleges his ownership of a tract of land irrigated by means of the Pilot Butte Canal and its laterals, and insists that the petition is insufficient for failure

"to allege or show that said lands * * are not directly benefited by irrigation, or that they can be irrigated from, or by, other means, or by means of any other irrigation system, or that said lands are to be devoted to other than agricultural, horticultural, viticultural or grazing uses, because said Central Oregon Irrigation District now owns * * the canals, laterals, flumes and other portions of the irrigation system by which all of the said lands are furnished water for irrigation and domestic purposes; and if said land is excluded from the district it will be without water for any purpose unless negotiated therefor with said district * * ."

Others protested against the allowance of the petition because, as stated in their written remonstrances,

"we do not believe it is for the best interests of the district that said lands be excluded at this time for the reason that the Central Oregon Irrigation District took the irrigation system over August 1, 1921, in a dilapidated condition and it is only just and proper that the irrigation system be put in good condition before any changes are made in its boundaries;

and that while the heaviest expenditure for repairs and replacement would necessarily be incurred in the building of the flume of the Central Oregon Canal we feel that all of the irrigable land within the district should bear its just portion of this expense, particularly in view of the fact that the lands now sought to be excluded were located under the Central Oregon Canal flume; also, the Pilot Butte and Central Oregon Canals are, as a matter of fact, a part of the same system.''

The statute provides that the filing of a petition for exclusion with the board of directors of an irrigation district shall be deemed as an assent by each and all of such petitioners to the exclusion from the district of the lands described in the petition, ''*or any part thereof,*'' and that the failure of any interested person in the district to protest in writing is to be deemed his consent to the exclusion of any or all lands described in the petition.

This was not a several petition. It came before the board as a whole. The landowner of the district residing in Crook County is given by law a right to notice of the petition, a right to be heard, a right to protest; yet he was deprived of his right to legal notice thereof.

After jurisdiction to hear the petition is acquired by the board and a full hearing is had as the law commands and the facts warrant, then the board may, in its discretion, exclude all, or a part only, of the lands sought to be withdrawn by the petitioners. However, in the case at bar, the board of directors never obtained jurisdiction of the subject matter, and its action in excluding the lands from the district was unlawful.

From the foregoing it follows that the Central Oregon Irrigation District was lawfully organized under the laws of the State of Oregon, and is a valid and legal irrigation district; that the board of direc-

tors were regularly elected and duly qualified, and entered upon the discharge of their duties as such; that the petitioners are now the duly elected, qualified and acting directors of such districts; that the board of directors were, at a legal election, authorized to issue the bonds of the district in the sum of $180,000 for the purposes hereinbefore set out; that the decree of the lower court validating. and confirming the organization of the Central Oregon Irrigation District and the elections hereinbefore referred to, including the issuance of bonds in the sum of $180,-000, is affirmed. But the decree of the court, in so far as it confirms the exclusion of any lands from the Central Oregon Irrigation District by virtue of an order of the board of directors made and entered on the tenth day of November, 1921, is reversed, and it is so ordered.

The defendants shall have and recover of and from the petitioners their costs and disbursements in this court.                                                     MODIFIED.

BURNETT, C. J., and BEAN and McCOURT, JJ., concur.