Submitted on briefs May 19, affirmed June 3, 1953

# EDWARDS et al. v. UNION HIGH SCHOOL DISTRICT No. 8 et al.

258 P. 2d 148

*Long & McKechnie,* of Albany, for appellants.

*Willis, Kyle & Emmons,* of Albany, for respondents.

TOOZE, J.

This is a suit for the adjudication of the regularity and validity of proceedings in connection with the organization of Union High School District No. 8, Linn-Benton counties, Oregon, the selection of the board of directors thereof, a subsequent boundary change in said district, the selection of a site for the building of a union high school, and a bond issue for building purposes in the amount of $1,350,000.

The complaint sets forth in detail the various steps taken in conjunction with all the foregoing matters. The prayer of the complaint is as follows:

"WHEREFORE, plaintiff prays that this Court judicially examine as to the sufficiency, regularity, legality and validity of:

"(a) All of the proceedings in connection with the organization of Union High School District No. 8, Linn County, Oregon, for high school purposes only, as submitted to and voted by the legally qualified voters of School District No. 26, Linn County, Oregon, on the 16th day of June, 1951, for such purpose, and as voted by the legally qualified voters of School Districts numbered 6, 14, 15, 18, 19, 20, 24, 25, 26, 32, 69, 86, 110, 119, 136 and 141, Linn County, Oregon, on the 25th day of September, 1951, for such purpose and as voted by the legally qualified voters of School District No. 114, Linn County, Oregon, on the 7th day of December, 1951, for such purpose; and

"(b) All of the proceedings in connection with the changing of the boundaries and building site of Union High School District No. 8, Linn County, Oregon, as submitted to and voted on and authorized by the legally qualified voters of said Union High School District, and as submitted to and voted on and authorized by the legally qualified voters of School District No. 5, Linn County, Oregon and School Districts

numbered 4, 34, 43 and 74C, Benton County Oregon, on the 27th day of May, 1952, for such purpose; and

"(c) All of the proceedings in connection with the selecting of a building site of and for Union High School District No. 8, Linn-Benton Counties, Oregon, as submitted to and voted on and authorized by the legally qualified voters of said Union High School District on the 15th day of September, 1952, for such purpose, and that Building Site No. 2 as described in this complaint is the duly selected and designated building site of and for said Union High School District; and

"(d) All of the proceedings in connection with the authorization of a bonded indebtedness of Union High School District No. 8, Linn-Benton Counties, Oregon, in the sum of ONE MILLION THREE HUNDRED FIFTY THOUSAND ($1,350,000.00) DOLLARS, as submitted to, voted upon and authorized by the legally qualified voters of said district at the election held therein for such purpose on the 25th day of October, 1952; and

"(e) That any and all persons, firms, corporations, associations, partnerships, and any and all other legal entities be permanently enjoined by this Court from asserting that Union High School District No. 8, Linn-Benton Counties, Oregon, is not a duly and regularly organized and existing public corporation under and by virtue of the laws of the State of Oregon pertaining to the organization of Union High School Districts in the State of Oregon, and that all officers thereof, both elected and appointed, and each and all of them, are not the legally elected and appointed, qualified and acting directors and clerk of said Union High School District No. 8, Linn-Benton Counties, Oregon; and

"(f) That this court set a place and time for hearing on this petition, and that after the

same judgment and decree of this Court be rendered on the matters submitted in accordance with law and equity, and this proceedings be confirmed.''

A general demurrer to the complaint was filed by Union High School District No. 8 and Merle A. Long, a taxpayer and legal voter of said district, upon the ground and for the reason that the complaint failed to state a cause of action. The demurrer was overruled, and defendants having refused to plead further, a decree was entered in accordance with the prayer of the complaint. Defendants appeal.

The complaint sets forth that Tangent School District No. 26, Linn county, Oregon, filed a petition requesting that an election be held for the purpose of having the legal voters of the district vote upon the question of whether the said school district should be included with other school districts in forming a union high school district for high school purposes only. The Tangent High School District No. 26, Linn county, Oregon, at the time the petition was filed, was maintaining a standard high school. Thereafter, on the 16th day of June, 1951, an election was held in the said district. The results were favorable to being included in the proposed union high school district and that the site for the said high school be in McFarland School District No. 25, Linn county, Oregon. Subsequent thereto, various other school districts filed petitions with the district boundary board of Linn county, requesting that their certain school district be included in the union high school district. August 31, 1951, was set as a date for hearing the petitions. Proper notice of the hearing was made.

*A remonstrance was filed by Regular School District No. 114, Linn county.*

The district boundary board thereupon called an election to be held in each of the school districts in Linn county, Oregon, which sought to comprise the union high school district, said election to be held on the 25th day of September, 1951. All notices were duly and regularly posted as required by law, *except in Lakeview School District No. 114*. The election was duly held in all districts, *including Lakeview School District No. 114, Linn county.*

Upon the canvass by the district boundary board it was discovered *that no notice had been given of the said election in Lakeview School District No. 114,* and the board withheld its findings relative to the results of the election.

*The district boundary board thereupon determined that the election held in Lakeview District No. 114, Linn county, was a nullity and called a special school district election to be held in Lakeview School District No. 114, for the purpose of submitting to the legal voters of the said district the question of the formation of the said union high school district.* Said election was held on December 7, 1951. Upon canvass of the second election in Lakeview School District No. 114, the district boundary board declared the union high school district fully and legally united for high school purposes only, and that the unionization was to become effective December 7, 1951.

At the elections aforementioned, consideration was given to the selection of a building site in McFarland School District No. 25 and to the selection of a board of directors for the said union high school district. The district boundary board, upon canvass of the elections as above set forth, determined that the building site selected would be in McFarland School District No. 25. As a result of the election, it was determined that the

board would consist of Floyd Edwards, Robert Groshong, S. O. Griffith, Leslie Cade and William Grenz, to serve terms commensurate with the number of votes received. Certificates of election were duly issued by the district boundary board to each of the directors above mentioned.

On March 10, 1952, petitions signed by the required number of qualified voters of Union High School District No. 8, and the required number of qualified voters of School District No. 5, Linn county, and School Districts Nos. 4, 34, 43 and 74C of Benton county were filed with the district boundary board asking that the boundaries of the said Union High School District be changed by adding and including therein Regular School District No. 5, Linn county, and Regular School Districts Nos. 4, 34, 43 and 74C of Benton county, Oregon.

Notice of the election was given as prescribed by law, and upon election and canvass of the votes, it was determined by the district boundary board that the boundaries of the said Union High School District No. 8 should be changed to include Regular School District No. 5, Linn county, and Regular School Districts Nos. 4, 34, and 43 of Benton county, with the site of the union high school to be within the boundaries of the city of Albany, Oregon. Thereafter, the school board of Union High School District No. 8 passed a resolution calling a special meeting of the said district for the purpose of voting on the question of selecting a site to be purchased by the board for the said union high school district. A selection of two sites was presented to the voters of the said district, both sites being within the corporate limits of the city of Albany, Oregon. Notice of the said election was given, and upon a canvass of the returns of the election committee, it was determined

that site number two was the site designated by the voters of the said district.

On the 29th day of September, 1952, the school board of Union High School District No. 8, Linn-Benton counties, met for the purpose of considering the calling of a special election concerning the question of contracting a bonded indebtedness in the name of the said school district in the sum of $1,350,000, for the purpose of providing funds with which to purchase and improve a building site and to construct and equip a high school building. The date of election on said bonds was set for the 25th day of October, 1952. Notices of the said election concerning the bond issue were given, and upon canvass of said election returns, it was determined that the bond election had carried. Certified results of said election were given to the county school superintendent and the county treasurer.

The proceedings for the formation of Union High School District No. 8 were taken pursuant to the provisions of § 111-3143, OCLA, as amended by ch 253, Oregon Laws 1945, which provides:

"Sec. 111-3143. Whenever two or more contiguous school districts desire to consolidate for the purpose of forming a union high school district for high school purposes only, the procedure shall be as follows:

"(1) When one or more districts to be united maintains a standard high school, and the board of directors have adopted a resolution declaring in favor of uniting, *and if such district maintaining a high school purposes* [*sic*] *to furnish a site for the proposed union high school,* such school district board or boards shall call an election in the district or districts maintaining a high school, *at which election the question of uniting with certain other school districts shall be submitted to the legal voters of such high school district.* The notice for such elec-

tion shall be given in the same manner as the notice for the annual school meeting and shall contain a statement of what districts are proposed to be united, *and if a site is proposed to be offered, the extent, terms and conditions of such offer.* The vote upon the question shall be by ballot, and the ballots shall have written or printed thereon:

" 'For union high school—Yes.'

" 'For union high school—No.'

*"If a site is to be offered by such high school· district,* said ballot shall have written or printed thereon the words:

" 'For transfer of property as a site—Yes.'

" 'For transfer of property as a site—No.'

" " \* \* \* \*

"(2) Thereafter petitions directed to the district boundary board from each of said districts proposed to be united for high school purposes only, signed by 10 legal voters, or not more than one-third of the legal voters residing in each of said districts, and specifying the districts or parts of districts proposed to be united, *and the site for the location of the union high school,* and praying that said group of districts be united and organized into a union high school district, shall be filed with the district boundary board of the county in which the most populous school district is located. \* \* \*

"(3) Upon filing said petitions the district boundary board shall check such petitions, and, if they are found to be regular and signed by a sufficient number of legal voters in each of said districts, the board shall fix a date for hearing said petitions and remonstrances thereto, which date shall be such as to give time for notices to be posted, and they shall direct each clerk of said school districts to post notices for a period of 20 days prior to date of hearing, in three public places within their respective school districts of the time and place of such hearing. The clerk of the district boundary board shall prepare such notices, which

shall be uniform in all the districts, and shall contain a statement that remonstrances may be filed as herein provided. The clerk of each of said districts shall make a record in his minute book of the time and place of posting such notices, and such record shall be conclusive evidence of said posting.

"(4) If, on the day of hearing, no remonstrances has [have] been filed with said district boundary board against organizing a union high school district, said board shall declare said districts to be organized as a union high school district for high school purposes only, and shall certify to the clerks of the respective school districts that the territory embraced in said districts has been united in a union high school district.

"(5) Ten or more legal voters in any one of said school districts may, at any time on or before the date of hearing said petitions, file with the district boundary board a remonstrance signed by them against the formation of said union high school district. No particular form of remonstrance shall be required.

"(6) If one or more remonstrance is filed with the boundary board within the time and in the manner provided, said board shall make an order, within 10 days of the date of hearing said petitions, directing the respective school boards of the districts proposed to be united, * * * to submit the question of forming a union high school district to the legal voters of each of said regular school districts, excluding the district maintaining a standard high school; * * *. The election shall be called therein and conducted by the regular school boards of each district at the schoolhouse therein, or at a place designated by the school board. These elections shall be held at the next succeeding annual school meeting or at a special election called at an earlier date by order of the district boundary board. *The notices of election shall clearly state that the question of forming a union high school district for high school purposes only, specifying the districts*

*to be united, and the site, will be voted upon at such election,* and such notices shall be posted in the same manner and for the same time as is required for regular school elections in districts of the third class, and the school clerk in each district shall record in his minute book the time and place of posting said notices, and such record shall be conclusive evidence of said posting. The vote on the question shall be by ballot, which shall have written or printed thereon the words:

" 'For union high school—Yes.'

" 'For union high school—No.'

" * * * * *

"(8) Within 10 days after the receipt of the election returns from said districts the boundary board shall open the sealed packages and canvass the votes. *If the board shall determine that a majority of all votes cast, and a majority of all districts voting at such election, shall be in favor of forming a union high school district for high school purposes only, then said district boundary board shall declare such union high school district regularly organized,* and immediately shall notify all the school boards concerned of the result and shall declare the territory comprising such districts to be a union high school district, numbered 1, 2, 3, etc., in the order of their formation.

" * * * * *

"*If the district boundary board shall determine that a majority of all votes cast and a majority of the districts voting at such election were not in favor of organizing a union high school district, then said boundary board shall notify all school boards concerned that the proposition was defeated.* The ballots, poll list and tally sheets shall be kept in the office of the county superintendent for one year thereafter.

" * * * * *." (Italics ours.)

As before observed, Tangent School District No. 26 maintained a standard high school and initiated the

proceedings for the formation of the union high school district. *However, it did not offer to furnish a site for the proposed union high school.* This is important because, as we interpret the statute in question, whereever the word "site" appears in the foregoing act, it refers to "the site" offered by the school district initiating the proceedings, if one is offered, and to no other.

■ If, as in the instant case, no site is offered by the school district initiating the proceedings, then the question of the selection of a site is not properly a part of original organization of the union high school district. That is a matter to be handled by the school board elected for such union high school district when formed. A vote upon that question at the original organization election could be considered advisory only, and not mandatory.

Sixteen separate school districts, together with Tangent School District No. 26, were included within the proposed union high school district. All were located in Linn county.

From the complaint it appears that at the election held in the 16 school districts, including Lakeview School District No. 114, on September 25, a total of 375 votes was cast. Of this number, 238 voted in favor of the proposal, while 137 were recorded as voting against it. Ten separate school districts voted favorably, with six districts voting in the negative. The proposal, therefore, received a favorable majority of all persons voting and of all school districts participating. The record does not disclose the vote of Lakeview School District No. 114. *However, it is important to note that the complaint does not allege, nor has it been contended, that the majorities in favor of organizing the district*

*could or would be adversely affected by the vote in that school district.*

Defendants contend that the original election held in Lakeview School District No. 114 was a nullity because notices for such election had not been posted as required by law, and that the district boundary board was without jurisdiction to order the holding of a second election in said district, and that such second election also was a nullity. Based upon these premises, defendants take the position that the entire proceedings for the organization of Union High School District No. 8 were vitiated; and upon the theory that "the stream cannot rise above the spring", defendants further contend that all subsequent acts of the union high school district are void.

It follows, therefore, that the validity of the organization of said district, as well as of subsequent proceedings, depends in large measure, if not entirely, upon the effect to be given the irregularity of the election held in Lakeview School District No. 114 on September 25.

■ At the outset it may be conceded that the election held in Lakeview School District No. 114 on September 25 was a nullity, due to the failure to post notices of election in that district prior to the election as required by law. However, as we shall later point out, this irregularity in the election held in that district did not vitiate the election as a whole. Although for the purpose of voting upon the organization of the proposed Union High School District, to be composed of sixteen separate school districts and Tangent School District No. 26, it was necessary to conduct an election in each separate district (except Tangent School District No. 26), nevertheless, the election in each separate district was but a part of the general election held throughout

the entire area to be embraced within the new high school district. Under the statute, the final result of the election depended upon the combined vote of all the separate school districts, and not upon the vote in any individual district. In principle, the situation is somewhat analogous to that of a state-wide election wherein the actual voting is done in separate voting precincts. Irregularity in the proceedings in one precinct could not vitiate the election as a whole.

For the purposes of this case, we need not pass upon the validity of the second election held in Lakeview School District, but we note that it is not claimed that anyone suffered any injury on account thereof. The purpose of the election provided by the statute is to give the voters an opportunity to express themselves upon the issue presented, after due notice thereof. In all the affected districts, except Lakeview School District, that opportunity was fully presented in the election of September 25. As a practical matter, and wholly apart from the question of the authority of the boundary board to call a second election in one separate school district to correct an error, the fact remains that the voters of the Lakeview district were actually afforded the same opportunity by that election, and approved the organization. *The record discloses that in all subsequent elections held in Union High School District No. 8, Lakeview School District No. 114 participated.*

■ An examination of the statute discloses that in the formation of a union high school district, a dissenting school district may be forced into the new district against its will. That is to say, even though it voted against the proposal to organize, a school district will be included in the new union high school district if a majority of all the persons voting throughout all the

districts, together with a majority of the districts voting, vote in favor of the organization. The rule is different when voting upon the annexation of additional school districts to a union high school district already formed. In that case, only those additional districts voting in favor of annexation are added to the high school district. § 111-3145, OCLA, as amended by ch 563, Oregon Laws 1947.

In the absence of any showing that, had the original election in Lakeview School District No. 114 been held strictly in accordance with law, the results of the election as a whole would have been changed so as to defeat the proposal for the organization of the union high school district, it cannot be said that the entire proceedings for organization were vitiated.

The record shows that the Lakeview district filed a petition to unite with the other school districts in forming the proposed union high school district. From that district there was also filed a remonstrance so that an election was necessary upon the question of organization. It would indeed be carrying technicalities too far to say that a single remonstrator could defeat the entire election by simply failing to post notices of election in its own district.

Before the election as a whole could be deemed illegal and void, it must be made to appear that the result of the election was affected by the illegality or errors charged. That does not appear in the instant case.

In *Links v. Anderson*, 86 Or 508, 519, 168 P 605, 1182, the court considered proceedings in connection with the organization of an irrigation district. In writing the opinion of the court, Mr. Justice BURNETT said:

"* * * We have seen that the County Court acquired jurisdiction to order an election and that

it did order the same and gave notice thereof. The plaintiffs have taken upon themselves the burden of contesting the election. *It is incumbent upon them, therefore, to show not only that illegal votes were cast but also wherein they would have affected the result adversely to the plainitffs.* They state in effect that many persons were allowed to vote at the election without being legal voters, but they give no intimation about the nature of their disqualification. *Neither is it stated whether these illegal votes were cast for or against the scheme of organization.* For aught that appears every illegal vote was cast against the organization. *Under such circumstances the plaintiffs cannot complain for it is manifest that the result would not be affected.* * * *"* (Italics ours.)

Also see *Webb v. Clatsop Co. School Dist. 3,* 188 Or 324, 334, 215 P2d 368; *Witham v. McNutt et al.,* 186 Or 668, 208 P2d 459; *Re Application of Riggs et al.,* 105 Or 531, 552, 207 P 175, 1005, 210 P 217; *Roesch v. Henry,* 54 Or 230, 103 P 439.

Union High School District No. 8, Linn-Benton counties, was legally organized as the result of the election of September 25; and what has been said as to the matter of organization applies with equal force to the election of the school board for that district, also accomplished at the election held on September 25.

■ The record discloses that the proceedings for extending the boundaries of Union High School District No. 8 to include a separate School District No. 5 of Linn county and separate School Districts Nos. 4, 34, and 43 of Benton county were in every way regular and valid.

The matter of selecting a school site for the high school building to be erected for the purposes of Union High School District No. 8 was the duty of the school board of such district. Ch 119, Oregon Laws 1945;

§ 111-1015, OCLA. The question of the selection of a school site was duly submitted by the school board to an election held throughout the union high school district, and site No. 2 in Albany was approved by a majority vote. *McBee v. School Dist. No. 48*, 163 Or 121, 128, 96 P2d 207.

■ It also appears that the proceedings taken to authorize the bond issue in the sum of $1,350,000 were in every way legal and valid, and that such bond issue was duly authorized by a majority vote of the voters in said union high school district.

■ It is necessary to note one further contention of defendants. They maintain that this proceeding was instituted pursuant to the provisions of § 111-3159, OCLA, and that under that statute the court had authority only to consider the validity of the proceedings for organization of the union high school district and the election of the members of the school board, and that it had no jurisdiction to pass upon the other questions presented by the complaint.

Section 111-3159, OCLA, provides:

"The union high school board of a union high school district organized under the provisions of chapter 31 of title 111 or acts amendatory thereof or supplemental thereto, may by petition commence special proceedings in the circuit court for the county in which the high school is maintained for the purpose of having a judicial examination and judgment of the court as to the regularity and legality of the proceedings in connection with the organization of the district and the election and organization of the union high school board of such district."

Section 111-3160, OCLA, in part provides:

"Said proceedings shall be in the nature of a proceeding in rem, and the practice and procedure

therein shall follow the practice and procedure of suits in equity so far as the same shall be consistent with the determination sought to be obtained, except as herein provided. The jurisdiction over the said union high school district and all of the taxpayers and legal voters therein shall be obtained by the publication of notice directed to said district, and to 'all taxpayers and legal voters within said district' without naming such taxpayers and legal voters individually. * * * Any person interested may at any time before the expiration of said ten days appear and contest the validity of such proceeding, or of any of the acts or things therein enumerated; such proceedings shall be speedily tried and judgment rendered declaring the matter so contested to be either valid or invalid; and any order or judgment in the course of such proceeding, or any final decree therein, may be made and rendered by the judge of such court in vacation, and for the purpose of any such order, judgment or decree, the said court shall be deemed at all times to be in session, and the act of the judge in making such order, judgment or decree shall be the act of the court. * * * The court, in inquiring into the regularity, legality or correctness of any of said proceedings, must disregard any error, irregularity or omission which does not affect the substantial rights of the parties to said special proceedings, and *may approve the proceedings in whole or in part and disapprove and declare illegal or invalid other or subsequent proceedings in whole or in part, and the court may approve the proceedings in part and disapprove the remainder thereof.* * * *":
(Italics ours.)

It is conceded that the foregoing statutes provide primarily for a special proceeding to determine the validity of the acts of organization and the election of members of the school board. However, the emphasized portion of the statute clearly indicates that the legislature intended that in any such proceeding, all ques-

tions of doubt then in existence should be determined in the one suit. The statute clearly contemplates *other and subsequent proceedings* following those of organization and the election of the school board and specifically authorizes the court, in the suit that is brought, to approve or disapprove them in whole or in part. The proceeding is actually in the nature of a suit for a declaratory judgment, and the statute is broad enough to permit the determination of all questions in dispute at the time suit is commenced. The trial court did not err in considering and determining all questions presented by the complaint.

The decree is affirmed. Neither party shall recover costs.