Argued November 20, 1956, reversed and remanded
January 23, 1957

# DIMITROFF *v.* STATE INDUSTRIAL ACCIDENT
# COMMISSION

306 P. 2d 398

*Earl M. Preston,* Assistant Attorney General for Oregon, argued the cause for appellant. With him on the brief were Robert Y. Thornton, Attorney General for Oregon, and Ray H. Lafky, Assistant Attorney General for Oregon, all of Salem.

*Ben Anderson,* of Portland, argued the cause for respondent. With him on the brief were Anderson, Franklin & O'Brien, of Portland.

Tooze, A.C.J., died December 21, 1956.

BRAND, J.

This is an appeal by the defendant State Industrial Accident Commission from a judgment of the circuit court favoring the plaintiff in an action brought under the provisions of the Workmen's Compensation Law. Plaintiff sustained personal injury by accident arising out of and within the course of his employment and became entitled to benefits under the Workmen's Compensation Act. His claim was approved and he was granted compensation for temporary total disability. Thereafter and on 29 November 1954 his claim for compensation was closed with an award for permanent partial disability equal to 25 per cent loss of function of an arm for an unscheduled disability. Being aggrieved by the order of 29 November 1954 plaintiff filed a petition for rehearing which was denied by the Commission on 9 March 1955, and a final order affirming the previous order was made. Plaintiff then filed his complaint in the circuit court, alleging:

"That plaintiff was and is aggrieved by defendant's order of November 29, 1954 and said order is unjust, unfair, and erroneous in that plaintiff received a ruptured spleen and injuries to the muscles, ligaments, tendons, nerves and soft tissues of his back. That as a result thereof plaintiff is unable to control his bowel movements, he is unable to do any walking or lifting; that he suffers severe pain in the back in the neighborhood of the spleen; that plaintiff underwent surgery for the removal of the spleen, and he is totally unable to perform any work, and therefore asks that his claim be reopened and he be paid temporary total disability until his condition becomes stationary, and when his condition becomes stationary, then he will be entitled to compensation for permanent partial disability equal to 100% lost function of an arm for unscheduled disabilities."

Defendant Commission denied the allegations concerning plaintiff's disabilities but admitted that plaintiff had undergone surgery for removal of the spleen. The cause was tried by a jury. A special verdict was returned whereby the jury found that the plaintiff's physical condition proximately resulting from his accident of 28 July 1954 was not stationary when his claim was closed on 29 November 1954 and was not stationary at the time of trial on 22 March 1956. Judgment was entered for plaintiff and the cause was remanded to the defendant Commission "for the purpose of paying to the plaintiff compensation in accordance with the terms of the verdict." Plaintiff had judgment for an attorney's fee and costs, and the defendant Commission appeals to this court.

■ Defendant assigns as error the following instruction which was given by the court on its own motion:

"Now, satisfactory evidence—I probably have been a little different than some courts. I take the position that plaintiff is under no burden to prove anything in this case. He comes here and he submits the facts as he sees them, and he has no burden to overcome anything, but whatever your findings may be, they must be based upon satisfactory evidence, and satisfactory evidence is that which ordinarily produces moral certainty or conviction in an unprejudiced mind. Whatever you find the facts to be in this case, you are to act upon them."

To instruct the jury that plaintiff had no burden of proof was clearly contradictory to the law and was prejudicial to the defendant. The statutes provide:

"The party having the affirmative of the issue shall produce the evidence to prove it. Therefore, the burden of proof lies on the party who would be defeated if no evidence were given on either side." ORS 41.210.

"Each party shall prove his own affirmative allegations. * * *" ORS 41.240.

"The jury * * * are * * * to be instructed by the court on all proper occasions:" ORS 17.250.

"That in civil cases the affirmative of the issue shall be proved, and when the evidence is contradictory, the finding shall be according to the preponderance of evidence; * * *." ORS 17.250(5).

The evidence in the pending case presented such a "proper occasion".

As said in *Gray v. Wassell,* 138 Or 274, 4 P2d 625:

"The legislature of the state enacted into law these plain provisions of the code; they need no construction and this court has no power to change or nullify them."

Plaintiff was required to produce satisfactory evidence upon the contested issue in the case, i.e., evidence "which ordinarily produces moral certainty or conviction in an unprejudiced mind. It alone will justify a verdict. Evidence less than this is insufficient evidence." ORS 41.110. It is also significant that the statute governing appeals from an order of the Industrial Accident Commission provides: "The case thereafter shall proceed as other civil cases in the court; * * *." ORS 656.288(3).

■■ As we have previously held, these provisions are plain and need no construction. *Gray v. Wassell,* supra. The burden is on the plaintiff to prove his case with reasonable certainty. *Goldfoot v. Lofgren,* 135 Or 533, 296 P 843; *Spicer v. Benefit Ass'n of Ry. Emp.,* 142 Or 574, 17 P2d 1107, 21 P2d 187; *Metropolitan Casualty Ins. Co. v. Lesher,* 152 Or 161, 52 P2d 1133; *Hutchison v. Aetna Life Insurance Co.,* 182 Or 639, 189 P2d 586; *Lemons v. Holland,* 205 Or 163, 284 P2d

1041, 286 P2d 656. The fact that this is an action under the Workmen's Compensation Act does not render any different construction applicable. We have repeatedly held that a claimant under the Act has the burden of proof to show that he is entitled to compensation. *Anderson v. State Industrial Acc. Com.*, 107 Or 304, 215 P 582; *Vient v. State Industrial Acc. Com.*, 123 Or 334, 262 P 250; *March v. State Ind. Acc. Comm.*, 142 Or 246, 20 P2d 227; *Hisey v. State Ind. Acc. Com.*, 163 Or 696, 99 P2d 475; *Dickison v. State Ind. Acc. Com.*, 165 Or 306, 107 P2d 104. The erroneous character of this instruction could not fail to result in prejudice to the defendant, and this is not cured by viewing the instruction as a whole.

This appeal presents a further question. The defendant moved for a nonsuit, and at the close of the case, for a directed verdict, and thereafter for judgment n.o.v. All three motions were denied. It is contended (1) that there was a failure of proof of any causal connection between the present alleged disabilities and the accident of 28 July 1954; (2) that there was no testimony offered in plaintiff's case as to the necessity of any further medical treatment for any condition causally connected with the accident; (3) that there was uncontradicted testimony by two qualified physicians that no further treatment was required as a result of the original injury; and (4) that the verdict of the jury was of necessity based upon mere speculation and conjecture. In support of these contentions it is argued that this is the type of case in which medical testimony supporting plaintiff's allegations was essential and that there was no such testimony. If the defendant is entitled to prevail upon these issues, then we would be required to enter judgment for defendant rather than to remand the case for

a new trial. As bearing upon these issues we first observe that plaintiff does not seek compensation for permanent total disability though he alleges that he is "totally unable to perform any work." He seeks only an award for temporary total disability "until his condition becomes stationary", and thereafter an increased award for "permanent partial disability."

■ The statutes, divorced from any administrative gloss are, to the judicial eye, exceedingly vague. The meaning of total disability may be gathered from the definition of permanent total disability by eliminating the element of permanency. So far as this case is concerned, total disability thus defined is a disability arising from "such paralysis or other condition * * * incapacitating the workman from regularly performing any work at a gainful and suitable occupation." ORS 656.206. "Temporary total disability" is not defined. The statute merely says, "When the total disability is only temporary the workman shall receive * * *", etc. ORS 656.210. Permanent partial disability includes loss of some member of the body (inapplicable here) and "any other injury known in surgery to be permanent partial disability." ORS 656.214. This is not a case in which plaintiff by his complaint seeks increased compensation under ORS 656.276 for aggravation of his disability subsequent to the last award. The complaint must be construed in the same manner as complaints in other actions.

In *Coblentz v. State Industrial Accident Commission*, 203 Or 258, 279 P2d 503, this court held:

"Insofar as pleadings are concerned, a court action based upon the Workmen's Compensation Law stands upon the same footing as any other action. ORS 656.002 et seq." Headnote 8.

The pending case is a simple appeal to the circuit court and thence to this court from the order of 29 November 1954. We turn to the evidence.

The testimony of the plaintiff may be summarized as follows: Prior to 28 July 1954 plaintiff was in good health and was steadily employed. Upon that date an air hose under heavy pressure became disconnected and struck plaintiff in the back, knocking him down. He could feel that he was "bleeding inside." He said, "it bust my spleen." He was taken to the hospital and Dr. Fox operated and "removed the spleen and pengra [pedicle ?]." Thereafter Dr. Long cared for the plaintiff. He was in the hospital during most of August and September 1954. After his release he returned to the hospital on two occasions by reason of fainting spells. He was in the hospital in January 1956 and the trial in the circuit court was held on 22 March 1956. Plaintiff was asked for what purpose he returned to the hospital, and answered, "Why, I had nerves, you know". The doctor was giving him pills. On November 29, 1954 when the Commission closed his case with an award of permanent partial disability he was "droopy and sick." He "couldn't make the steps on the building." He had pain on the left side and back. He was unable to work. After the operation he was constipated. His wife operates a cafe. He tried to help his wife but "couldn't do it." During 1955 when he tried walking short distances he became exhausted. Concerning his condition in March 1956 he testified:

"Q And did you have any bloating of your stomach?

"A I had last week, last week 13th, that's the first time that happened, and one here and one here, and one in my throat (indicating), just like a boil, and I don't mean any place else either. Just over

here, one over here, one this side, and one on my vein here (indicating), just like a boil. * * *"

He feels that he is "just burning". When he tries to work he gets faint and becomes dizzy. He doesn't think he is any better. He could not resume his former employment which involves the use of heavy equipment. He testified that his stomach and digestive tract were "pretty bad to start with" but "are now a little better." He was not in the hospital at any time in 1955 and he had not been to a doctor since January or February 1955, except as above stated. He tries to help his wife in her cafe, concerning which he testified as follows:

"Q What work?
"A Wash dishes, you know. There is a lot of work outside in the yard.

"Q What do you do outside in the yard?
"A Roof and pipes and wood to be cut and split.

"Q You do that for your wife?
"A I'm trying it, by gosh, and I can't make it, and I have to relax.

"Q Have you tried anything else?
"A. No."

Dr. Long gave the plaintiff medicine and shots in January 1956.

The next witness to testify to his condition was his wife. She testified that on return from the hospital his color was pasty yellow, and then he would get red. She said the plaintiff bloated in 1954 as well as 1956. He did not seem to gain strength in 1956. She said "I think he seems to be getting worse." Three other witnesses corroborated the testimony of the plaintiff to some extent, but added nothing new. There was no medical testimony in the plaintiff's case. Unless we

invoke "post hoc ergo propter hoc" as evidence, there was none connecting his nervousness of January 1956 with the injury and there was none connecting his present bowel condition with that injury.

We will now summarize the relevant testimony produced by the defendant Commission.

Dr. Woods saw the plaintiff shortly after the injury for the purpose of diagnosis. After the operation for the removal of the spleen and shortly before the denial by the Commission of plaintiff's petition for rehearing, the doctor gave the plaintiff a complete physical examination. He testified that the only function of the spleen is "blood forming" and removal of some impurities in the blood stream. The doctor found the plaintiff's blood absolutely normal. He testified:

"A  In short I felt the physical examination was entirely normal at that time.

"Q  You gave a complete physical examination?
"A  Yes, sir.

"Q  Testing all the movements of the body?
"A  That is correct.

"Q  What, if any, limitations of motion or use of any member or part of his body did this man have at that time?
"A  Revealed a large well-developed muscular individual with normal locomotion and normal movement in both arms and legs. There was also normal movement in the neck and shoulders. Heart normal; blood pressure normal.

"Q  What, if any, restriction of motion did he have in his back?
"A  None whatsoever."

Because the plaintiff complained of trouble with his intestines the doctor performed an X-ray examination of plaintiff's colon. He testified that there was no

evidence of any obstruction that might have resulted from a previous injury or surgical procedure. The colon filled and emptied normally. He testified further that no part of the digestive tract is operated on or damaged by an operation for a removal of the spleen. The doctor further testified that three X-ray pictures were taken and a fluoroscopic examination was made which disclosed no abnormality. He testified further that the bloating complained of by the plaintiff is not associated with the injury and that the complaint of dizziness also was not associated with the injury. He further testified that there is no disability connected with the spleen so far as the removal of the spleen is concerned. The doctor found no muscle spasm or splinting and no loss of motion in the back. Finally the doctor testified that he did not believe that on February 19, 1955 there was any disabling condition as a result of his injury or of the operation. He further testified that in his opinion the plaintiff does not need any further treatment.

Dr. Long and Dr. Fox participated in the removal of the spleen. Dr. Long testified:

"Q When, if ever, did you determine that his condition had become stationary?
"A Well, I wrote a letter to the State Industrial Accident Commission on October 20th of 1954 in which I said that I could find no indication for further medical treatment, so I think that's about the time."

Concerning his treatment subsequent to October 1954, the doctor testified:

"A I have given him no active treatment for this spleenectomy business. He's been in the office —he was in in October of 1955 and I gave him some symptomatic treatment for circulatory disorders.

I didn't give him anything directly referrable to this spleenectomy, any specific treatment.

"Q  This circulatory trouble, was that connected with the accident?

"A  I think so. It's hard to put cause and effect on those things, but I think probably it was.

"Q  What, if any, other treatment does this man need at the present time, if any?

"A  I don't know of any."

Shortly before the circuit court trial and in March 1956 the doctor performed an electrocardiogram upon plaintiff and found no damage or strain to the heart. We quote:

"A  We tested his blood, his urine, and did a chest X-ray, checked his blood pressure and did a complete physical, listened to his heart and lungs and palpated his abdomen, examined his prostrate [sic], and his hernia areas were tested, and as far as I could tell, everything was all right."

At that time plaintiff complained of "dizziness and more than usual fatigue and poor circulation in his left leg, the whole left leg, and some in the right", and back pains. The doctor made no objective finding to substantiate the complaint. He knows of no relation between the removal of the spleen and plaintiff's feeling of weakness, or between the operation and bloating. He thought it improbable that there was injury to the digestive tract as a result of the accident. Finally Dr. Long testified that he had not been able to find anything that would prevent plaintiff from returning to work. Drs. Wood and Long were the only witnesses for defendant.

We have reviewed the evidence, not for the purpose of usurping the functions of the jury, but only for its bearing upon the legal questions presented by the motions for directed verdict, etc.

■ On the basis of the evidence thus summarized we shall decide whether there was substantial evidence to go to the jury. We shall consider whether there was evidence (1) that plaintiff was suffering from total disability subsequent to 29 November 1954, (2) that such disability, if any, was the proximate result of his injury, (3) that his condition had not become "stationary" on 29 November 1954, (4) that his condition required further treatment by the Commission after that date. We will then consider what the legal effect of our conclusions in the four categories should be. There is evidence that subsequent to 29 November 1954 plaintiff was incapable of regularly performing any work at a gainful and suitable occupation (ORS 656.206), that is, that he was totally disabled. The evidence to that effect is by lay witnesses, especially by plaintiff, and is unsupported by medical testimony. There was expert testimony to the contrary, but under our decisions the lay testimony was admissible. *Wilson v. State Ind. Acc. Com.*, 162 Or 588, 591, 599, 94 P2d 129; *Hartley v. State Industrial Acc. Com.*, 123 Or 310, 312, 261 P 71 (relevant to testimony of plaintiff's wife that he seems to be getting worse). From the latter case, we quote:

"* * * It is well settled that a nonexpert witness should be permitted to testify as to the apparent health and physical condition of a person and as to whether there had been any change in that respect since the happening of an accident; * * *."

And see, *Crosby v. Portland Ry. Co.*, 53 Or 496, 504, 100 P 300, 101 P 204.

In *Tyler v. Moore*, 111 Or 499, 507, 226 P 443, a lay witness was held entitled to testify that plaintiff was unable "to perform regular household work." See

also, *Sloss-Sheffield Steel & Iron Co. v. Underwood,* 204 Ala 286, 85 So 441; *Corona Coal Co. v. Sexton,* 213 Ala 554, 105 So 718; *Hensley v. Kansas City Rys.* (Mo App 1919), 214 SW 287; *St. Louis Southwestern Ry. Co. v. McDowell,* (Tex Civ App, 1903) 73 SW 974; *Central Illinois Public Service Co. v. Industrial Commission,* 302 Ill 27, 134 NE 124; 32 CJS 108, Evidence, § 467, id page 191, § 513.

■ We conclude that there was evidence for the jury on the question "(1)", supra, under ORS 656.206.

■ We pass to the second question: Was there evidence for the jury that such total disability was the proximate result of his injury? The question as it arises in this case is materially different from that which arises on an appeal to the circuit court when the Commission has denied all liability and denies that any disability was the proximate result of the injury, or when the appeal is from an order denying a claim for aggravation arising after the award. In such cases it will frequently become necessary to present expert medical testimony to establish the proximate causal relation between injury and alleged disability. In the case at bar, however, the Commission by its order established that from the time of injury on 28 July 1954 down to 29 November 1954 the plaintiff was totally disabled and that such disability was the proximate result of the injury—otherwise it could not have awarded compensation.

In a case of this kind where the evidence for plaintiff showed that plaintiff could not regularly perform any work, and that the total disability which existed immediately before 29 November 1954 continued immediately after that date, it would be hypercritical to hold that a jury could not find that the disability existing after 29 November was the proximate result of the

same injury which proximately caused the disability immediately before 29 November.

Our third question is whether there was or was not evidence that plaintiff's condition had become "stationary" on 29 November 1954. It is difficult for a layman, judge or juror, to know just what was meant by the medical witness in testifying that plaintiff's condition was stationary. Obviously the plaintiff, who claimed total disability both before and after 29 November, would have said that his condition had remained stationary. It is equally obvious that the expert meant something entirely different in his testimony. On being asked when he determined that plaintiff's condition was "stationary", Dr. Long said it must have been about the time when he wrote a letter stating that he "could find no indication for further medical treatment." We believe that the term "stationary", as applied to the condition of an injured workman, has become a "term of art" in the administrative usage of the Commission.

The statute governing the administrative action of the Commission provides that one purpose of the law is to restore the injured workman "as nearly as possible to a condition of self-support and maintenance as an able-bodied workman, and final settlement shall not be made in any case until the commission is satisfied that such restoration is probably as complete as it can be made. * * *" ORS 656.246. The same section authorizes the expenditure of money from the fund for that purpose. It is obvious that the "restoration" referred to is a restoration by some form of treatment administered to the workman which is to be as "complete as it can be made" by the Commission and normally involving expenditure of money from the fund. This section has not been cited in the briefs and

we have not had the benefit of discussion of the question now under consideration. But we think it probable that in the administrative usage a workman's condition is considered "stationary" when he reaches the stage at which his restoration to a condition of self-support and maintenance as an able-bodied workman is found by the Commission on the basis of expert medical opinion to be as complete as it can be made by treatment. Undoubtedly when that stage is reached it will ordinarily mark the time at which the period of temporary total disability will be declared to be at an end and an award of permanent partial disability will be made as a final settlement. The Commission is prohibited from making such final settlement until the stage in question has been reached, but the statute does not require that final settlement must be made as soon as the workman's "restoration" is as complete as the Commission can make it by treatment. The reason is that there may be a total disability either temporary or permanent which may persist in spite of the fact that the workman cannot be further benefited by treatment. Even if an award of permanent total disability is made it may thereafter be modified in event of the changed physical condition of the workman. ORS 656.278; *Hoffmeister v. State I. A. Com.,* 176 Or 216, 156 P2d 834; *Bell v. State Industrial Acc. Com.,* 157 Or 653, 660, 74 P2d 55; *State ex rel. Griffin v. State Ind. Acc. Comm.,* 145 Or 443, 28 P2d 237. We think there may also be cases in which the workman might be diagnosed as having a total disability which could not be improved by treatment by the Commission, yet which would be classed as temporary and which might change for the better merely through lapse of time.

In *Vader v. State Ind. Acc. Com.,* 163 Or 492, 98

P2d 714, the workman suffered an unscheduled back injury and was awarded compensation for temporary total disability which was terminated by an award for permanent partial disability, as in the case at bar. The court sitting without a jury made a finding that the workman was still "temporarily and totally disabled and in need for further * * * treatment". The case was remanded and the Commission was directed to compensate plaintiff for temporary total disability and to reopen the claim for further medical treatment "until such time as plaintiff's condition shall have become stationary". The Supreme Court affirmed the judgment and thus the terminology employed by the Commission crept into the opinion of this court and has been since used in instructing juries. When Dr. Long testified that plaintiff's condition had become "stationary", we think he meant that no further medical treatment was indicated.

The third and fourth questions supra were in substance the same, i.e., "(3)" had plaintiff's condition become stationary, and "(4)" did his condition require further treatment? Whether plaintiff's condition required further medical treatment was, in our opinion, a question requiring expert opinion. A lay witness was not qualified to testify on that issue. Plaintiff offered no expert opinion and the testimony of two doctors called by the defendant was positive that no further treatment was required. We are bound by that testimony.

The question presented by the motion for a directed verdict may now be stated. Where there was substantial evidence of a total disability incapacitating the workman from regularly performing any work at a gainful and suitable occupation (ORS 656.206) and proximately resulting from his injury and continuing

after 29 November 1954, but where there is no evidence that he required further medical treatment after that date, must the trial court direct the entry of a verdict and judgment for the defendant? Under these circumstances we hold that a jury question was presented and the motions for nonsuit and directed verdict were properly denied. A workman may be unable to work under the statutory test and yet the physicians may at a particular stage of the case find no occasion for further medical treatment. A totally disabled workman is entitled to medical and hospital care under ORS 656.242 if medical care is indicated, but that is not the only relief to which such a person is entitled. When total disability results from the injury he "shall receive monthly during the period of such disability * * *", if such disability is found to be permanent, the sum specified in ORS 656.206. If such disability is found to be temporary he "shall receive during the period of such total disability" the sums specified in ORS 656.210. The compensation specified is not made dependent upon the necessity for medical treatment but is conditioned upon the condition of the workman and his ability to work. Medical practice has not yet become so exact a science that doctors can predict with certainty and finality the future course of an unscheduled injury and this truth has been demonstrated in the cases cited supra in which awards made for permanent total disability have been modified when it was eventually made to appear that conditions had changed and that the disability was not permanent. The judgment of the trial court must be reversed for prejudicial error, but plaintiff is entitled to a new trial. At that trial the questions for decision of the jury, if the evidence warrants, will be those questions presented by the complaint, i.e., whether plaintiff was still suffer-

ing temporary total disability after the time when the Commission held that such disability had ended, and if so, whether the condition has continued to the time of trial, or if the condition had not continued so long, then how long it had continued. Whether or not the plaintiff's condition had become stationary, the healing period being ended, may be material to the issue to be submitted, but is not the issue. The first three interrogatories as submitted would fairly present the issues if the court substitutes the questions above stated for those which referred to the "stationary" condition. Obviously if the jury finds that the plaintiff is still suffering from temporary total disability at the time of the next trial it cannot determine the extent of permanent partial disability, but if it should find that the temporary total disability has ended, it might then also determine when it ended and the extent of permanent partial disability existing thereafter.

In holding that there was evidence from which the jury could find that plaintiff was unable to regularly perform any work at a gainful and suitable occupation we do not mean to imply that, in the absence of expert testimony, the jury could find that certain of plaintiff's symptoms such as dizziness and bloating were the result of the injury. Specific symptoms of that sort require medical testimony connecting the symptom with the injury.

We find no prejudicial error in the assignments concerning the admission of evidence. See authorities cited supra, and 31 CJS 994, Evidence, § 246.

■ The court should have given the statutory instruction concerning the burden of proof. ORS 17.250 (5).

■ Assignment of Error No. VII complains of the failure to give a cautionary instruction concerning the

duty of the jury to avoid guess or speculation. The matter was adequately covered by an instruction given.

■ By Assignment of Error No. VIII the defendant complains of the refusal by the court to give a requested instruction based upon ORS 41.360(15) which establishes the disputable presumption that official duty has been regularly performed and which provides that such a presumption is satisfactory unless overcome, that it may be controverted by other evidence, direct or indirect, "but unless so overcome, the jury is bound to find according to the presumption." See also, ORS 41.310. In this instance the request was for an instruction informing the jury that there was such a disputable presumption that the Commission had properly determined the amount of disability suffered by plaintiff.

■ The property of instructing on disputable presumptions was exhaustively considered in *Wyckoff v. Mutual Life Ins. Co.*, 173 Or 592, 147 P2d 227. In that case it was held by a divided court that under Oregon statutes and decisions presumptions have "evidentiary value", and that "If * * * such presumption does, under our statute, have evidentiary value, the failure to instruct the jury as to its existence would clearly be reversible error." 173 Or at 603, 147 P2d 232. As a dissenter in the Wyckoff case the writer of this opinion bows to the will of the majority and acknowledges that that case establishes the law of Oregon.

A multitude of decisions have recognized that administrative action in a wide variety of cases has been presumed by the courts to have been properly performed. Among them we cite the following: *State of Oregon v. Sengstacken*, 61 Or 455, 122 P 292; *State ex rel. v. Port of Tillamook*, 62 Or 332, 338, 124 P 637; *State ex rel. v. Olcott*, 67 Or 214, 135 P 95, 135 P 902. The Olcott case was a suit on relation of a district

attorney to enjoin the secretary of state from printing a ballot title on the official ballot. The court held that the evidence was very meager, none being offered by the defendant, but it said:

"* * * we think sufficient is shown on an inspection of the petition to justify the action of the defendant in filing the petition and in his intended certification of the ballot title. We are much influenced in this conclusion by the fact that it is the duty of the defendant in his official capacity to determine in the first instance by an inspection of the petition whether or not the signatures are genuine and are regularly authenticated. The presumption is that he has performed his duty properly, * * *."

See also, *Yeaton v. Barnhart,* 78 Or 249, 150 P 742, 152 P 1192; *Umpqua B. Exch. v. Um-qua V. B. Growers,* 117 Or 678, 245 P 324; *Pacific Tel. & Tel. Co. v. Wallace,* 158 Or 210, 226, 227, 75 P2d 942.

In *Bratt v. State Industrial Acc. Com.,* 114 Or 644, 236 P 478, this court said:

"* * * The affidavits accompanying the motion clearly disclose that the Industrial Accident Commission had examined and inquired into the claim of the claimant and had made its award thereon. The Industrial Accident Commission is entitled to the presumption of the law that official duty has been regularly performed: * * *." Citing *Re Application of Riggs et al.,* 105 Or 531, 207 P 175, 210 P 217.

Again, in *Brazeale v. State Ind. Acc. Comm.,* 190 Or 565, 227 P2d 804, the court said:

"* * * In denying the claim, the Commission, of course, acted in good faith, and is entitled, at the very least, to the disputable presumption that its official duty in the premises was regularly performed. * * *."

In a recent case we gave careful consideration to an appeal from an order of the Tax Commission to the circuit court and thence to the Supreme Court. We said:

"* * * The law presumes that the commission faithfully performed its duties. One who wishes to challenge an order entered by the commission has the burden of proof and he must come forward with persuasive evidence in support of his claim of error." *Inland Nav. Co. v. Chambers et al.*, 202 Or 339, 361, 274 P2d 104.

The importance of the administrative function was further emphasized in the same case:

"* * * If the administrative agency had adequate powers to deal openly, fairly, justly and impartially with the subject matter entrusted to its jurisdiction, the state generally need not provide for an additional hearing in its courts: * * *." 202 Or at 350.

See also, 42 Am Jur 680, Public Administrative Law, § 240.

In this state the procedure in appeals to the circuit court from orders of the Industrial Accident Commission differs materially from that which controls in appeals to the courts from administrative decisions or other administrative agencies in this state and in many other jurisdictions. In *Richardson v. Neuner*, 183 Or 558, 194 P2d 989, we said:

"The courts have frequently determined how far they should go in reviewing action taken by administrative agencies which possess quasi-judicial powers but which perform duties outside of the scope of the judicial branch. Rate-making is an instance. Generally, they go no further than to determine whether the agency (1) acted impartially; (2) performed faithfully the duties delineated in

the legislative acts which conferred jurisdiction upon it; (3) stayed within its jurisdiction; (4) committed no error of law; (5) exercised discretion judiciously and not capriciously; and (6) arrived at no conclusion which was clearly wrong.''

See 42 Am Jur 674, Public Administrative Law, § 235.

■ Appeals from awards of the Industrial Accident Commission to the circuit courts authorize trials de novo before a jury in which the parties are not limited to the record made before the Commission. The result is that the decision of an experienced commission, based upon technical and medical knowledge, is reviewed by laymen having normally no experience in the difficult process of determining the extent of disability or the need of medical treatment, and having no familiarity with the administrative procedure or the terminology employed therein. We therefore find it to be of peculiar importance that the jury in the exercise of its independent function should at least be informed by an instruction that there is a disputable presumption in favor of the decision of the commission.

There is one decision of this court, rendered prior to most of the cases cited supra, which is inconsistent with those decisions and with our present conclusion. In *Hinkle v. State Ind. Acc. Com.*, 163 Or 395, 97 P2d 725, error was charged in the refusal of the court to give the following instruction:

    '' 'In addition to the direct evidence that there has been given upon the witness stand the Oregon law announces certain presumptions which are also evidence. Among the presumptions which are satisfactory evidence unless overcome, is the presumption that official duty has been regularly performed and the further presumption that the law has been obeyed. I instruct you that the defendant in this

cause is entitled to the benefit of these presumptions. These presumptions may be overcome by other evidence, direct or indirect, but unless so overcome you are bound to find according to these presumptions. * * *' ''

This court, in an opinion by Justice KELLY, held that no error was committed by the refusal to give the requested instruction. The reasoning in attempted support of the conclusion is of interest. The court said:

"The case being tried de novo in the circuit court, there was no feature thereof to be submitted to the jury which involved an application or consideration of either of the above presumptions by the jury. The jury were in service to determine the extent of plaintiff's disability."

This would seem to imply that merely because a cause is tried de novo in the circuit court it is improper to give the jury the benefit of instructions on the rules of evidence or presumptions. Insofar as *Hinkle v. State Ind. Acc. Com.* holds that it is improper to instruct the jury concerning the presumptions of regularity in the order of the Commission, that case has been and is overruled. We hold that the trial court should have instructed the jury concerning the presumption favoring administrative action.

There is no merit in the ninth assignment of error. The subject referred to was adequately covered in the court's instructions.

There are some other defects in the instructions which were obviously given extemporaneously in the haste of a trial. We refer particularly to instructions explaining the interrogatories submitted to the jury. We assume that they will not occur at a new trial.

The judgment for plaintiff is reversed and the case is remanded for a new trial.