Argued March 1, affirmed April 20, 1977

PRATT, *Respondent,*
*v.*
STATE ACCIDENT INSURANCE FUND,
*Appellant.*
(No. A 76-08-11974, CA 7332)

562 P2d 1242

Kevin L. Mannix, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Glenn H. Prohaska, Portland, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, and Tanzer and Richardson, Judges.

RICHARDSON, J.

**RICHARDSON, J.**

The issue in this worker's compensation case is whether claimant's condition is medically stationary under ORS 656.268(1) in order that he may be awarded permanent disability benefits.

Claimant injured his back during the course of his employment as a draftsman September 23, 1969. A determination order was first issued December 8, 1969, awarding claimant temporary total disability but no permanent partial disability. The claim was reopened and closed by a second determination order August 20, 1973, which awarded claimant 48 degrees for unscheduled low back disability. At a subsequent hearing on the latter determination order the referee increased the award to 80 degrees.

On January 23, 1975, claimant filed a claim for aggravation. There followed a number of proceedings not pertinent to this appeal. At a subsequent hearing on the merits of the aggravation claim the referee found claimant to be permanently and totally disabled. The Workmen's Compensation Board reversed the referee and ordered the Fund to provide claimant with further care and treatment including psychiatric and psychological counseling as required. The Board also ordered the Fund to pay temporary disability compensation until claimant is medically stationary and his claim could be closed. The circuit court reversed the Board and agreed with the referee. The Fund appeals.[1]

Claimant's back injury has medically stabilized and is not permanently disabling. However, because of his injury and his emotional response superimposed on his general emotional pathology he has substantial psychological problems. The issue is whether his

---

[1] In the proceedings below the Fund contended the claim for aggravation was not timely filed and that the award of attorney fees was not proper. On appeal the Fund concedes the claim was properly filed and the award of attorney fees was proper.

psychological condition has become medically stationary to the extent necessary to allow a permanent disability award.

■ Permanent disability awards cannot be made until an injured workman is "medically stationary" as provided in ORS 656.268(1). The term "medically stationary" was coined by the Supreme Court in *Dimitroff v. State Ind. Acc. Com.,* 209 Or 316, 306 P2d 398 (1957), and then was codified as part of the present Workmen's Compensation Act. The Supreme Court defined that term to mean "* * * when he [the injured worker] reaches the stage at which his restoration to a condition of self-support and maintenance as an able-bodied workman is found * * * on the basis of expert medical opinion to be as complete as it can be made by treatment. * * *" In this context the term has two aspects; (1) that the treatment provided has succeeded in returning the worker to the work force or (2) that further treatment will be unsuccessful in accomplishing that aim and the worker would be considered permanently disabled. The medical evidence must be analyzed and evaluated in terms of the purposes expressed in ORS 656.268(1):

> "One purpose of this chapter is to restore the injured workman as soon as possible and as near as possible to a condition of self support and maintenance as an able-bodied workman. * * *"

■■ The claimant has the burden of proof to establish by a preponderance of the evidence that his condition is medically stationary. *Brennan v. SAIF,* 11 Or App 530, 504 P2d 142 (1972). Since we are dealing with a medical condition the proof must rest on competent medical evidence. *Dimitroff v. State Ind. Acc. Com., supra.* The medical evidence was presented by way of joint exhibits and the testimony of a clinical psychologist on behalf of claimant. In a de novo review we must draw our own inferences from the evidence presented.

As a result of his back injury in 1969, claimant had a laminectomy and discectomy in May, 1972. Following the operation claimant still complained of back

pain which rendered him unable to sit and perform the work as a draftsman. It was recommended he be referred for retraining through the Vocational Rehabilitation Division. Efforts to retrain claimant were unsuccessful. He entered three training programs but because of persistent complaints of pain and fear of pain coupled with his emotional response to his inability to perform the school asked that he be terminated.

In June, 1973, claimant was sent to The Psychology Center for evaluation and counseling. Much of the evidence respecting claimant's psychological condition was from clinical psychologists associated with the Center. Dr. Beals examined claimant in August of 1974 and evaluated his physical condition at the request of The Psychology Center; he concluded:

"In view of his psychological evaluation, returning this man to work presents a difficult challenge. From a purely physical standpoint, I believe this man could return to work in a job not requiring heavy lifting and a job not requiring him to sit and work over a drawing board. While I don't have any specific suggestions, I believe that returning him to drafting at this time would not be successful. From the long term standpoint, there is every reason to believe that he will gradually spontaneously improve. Reinforcing this idea might benefit his psychological status."

Dr. Fleming, a clinical psychologist associated with The Psychology Center, summarized claimant's emotional problems in his testimony at the hearing:

"He grew up in very poor surroundings. His mother was on Welfare, his parents were divorced, I think when he was six or eight years old, and he grew up helping to support his mother by running a newspaper—by not running a newspaper but by selling newspapers, and he grew up always with the idea that although he was small of stature he could always achieve by trying harder than anybody else.

"I think from a psychological point of view this was one of the critical issues, that when he attempted to return to work he was no longer able to do better than anybody else by trying. On the contrary, the more he tried the less he succeeded.

"Now, at the same time it is extremely important for this man to be able to work. His whole idea of who he is as a man is completely tied up with his ability to work and provide for his family.

"Some people get their enjoyment out of life out of recreation of one kind or another. For Mr. Pratt his whole life identity is tied up with his work, so he has been put in a dilemma, the dilemma being, 'I am not able to work as I used to. I am not as competent and able a workman as I used to be, and the more I try the less I succeed, while on the other hand unless I work I am not a man,' and this has created serious problems, with several threats of suicide within the past time that I have been seeing him."

In his order following the hearing April 17, 1974, on the second determination order the referee summarized claimant's psychological disability to that point:

"The expert (psychological) prognosis is that the psychological disability resulting from the accident will not be permanent—with the caveat that more counseling may be needed before claimant is restored to the work force—* * *."

After several months of counseling sessions at The Psychology Center Dr. Hickman, a clinical psychologist, reported on July 22, 1974:

"It has now been more than a year since we previously examined the patient and we are hereby requesting permission to conduct a follow-up examination to determine what changes may be taking place in this patient. When counseling began, we felt that the patient's emotional condition probably had deteriorated somewhat. We are hopeful that we have been able to reverse this process through the counseling which has been done with him."

A subsequent report of psychological evaluation by Dr. Fleming of August 27, 1974, concluded in part: "* * * During 1973 his hopes, though not quite as high, were still to return to work. Now he has reached the point where any physical stress or strain is more difficult for him to tolerate. So, if he does not return to

work he faces an identity crisis and yet he is over-whelmed with his physical limitations, his pains, and the demands of a job. * * * But, in comparing his psychological profile with that of 1973, it must be concluded that his situation has become more serious. * * * In view of his present psychological profile, the prognosis for his return to gainful employment must be extremely guarded. * * *"

Dr. Fleming's report of October 8, 1974, which preceded claimant's attempts at retraining expressed some hope contingent upon a successful retraining program:

"If this client is able to tolerate the stress of a training program for several hours a day, and if his progress in that training is satisfactory to the point that it offers valid hope that he will be gainfully employed, there is some solid hope that his psychological condition will improve. If, on the other hand, the training program does not offer the hope for gainful employment, then a review of his entire case appears to be in order."

When it was determined claimant could not suc-cessfully complete any retraining programs Dr. Flem-ing reevaluated him and in a report of January 3, 1975, stated:

"Psychotherapy has enabled him to deal with the crises that have occurred, including his suicide threats, but he has not responded sufficiently to warrant the hope that he will profit from further training, and/or that he will be able to return to gainful employment. It is, therefore, recommended that he be declared totally and permanently disabled."

A review of the psychological reports indicates that after an initial period of improvement claimant's condition has worsened. This worsening in his condi-tion, the Fund argues, establishes that he is not medically stationary so as to allow closure of his claim. While a steady worsening in condition indicates a condition which is not static, we do not believe the Workmen's Compensation Act requires that an in-jured worker progress to the lowest level of physical or

emotional deterioration before his claim may be closed. If at some point along the line of progression the medical evidence indicates further treatment will not return the worker to gainful employment his condition would be medically stationary despite the fact there may be further deterioration.

In this case we find the claimant's condition has arrived at that point. His condition has steadily deteriorated to the point Dr. Fleming concluded in January, 1975, that hope he would return to gainful employment was not warranted. In his opinion of January, 1975, Dr. Fleming also said:

> "It is important that a hope be held out to him that one day he will be able to return to work. It is recommended that he be seen for one or two therapy sessions subsequent to the permanent disability decision to enable him to accept this status and the hope that he may again return to work."

The hope claimant may return to work must be analyzed in light of his psychological problems. When faced with the prospects of not being able to return to work claimant's emotional response was debilitating and included even threats of suicide. The clinical psychologists felt it was important for his emotional well being that he not be informed of the slim hope he could return to work, consequently, he was excluded from the hearings so he would not hear Dr. Fleming's testimony. Thus, it appears the "hope" is in the vein of a therapeutic tool to keep claimant from reacting despondently perhaps to the extent of suicide and not an impression there is a realistic hope of improvement sufficient to restore him to gainful employment.

Dr. Hickman stated in a letter received in evidence:

> "I think that a total permanent disability status can give this man some feeling of financial security which may stabilize his emotional condition somewhat. If as Doctor Beals has stated, 'there is every reason to believe that he will gradually spontaneously improve,' then we can at least hope that he may someday reach the point

where he is able to abandon a total permanent disability status and return to gainful employment."

■ Dr. Fleming reiterated in his testimony this hoped for result from a permanent total award. This statement, the Fund claims, is evidence there can be improvement toward gainful employment in claimant's condition. However, any improvement appears to be conditioned upon solving one of claimant's critical psychological problems of providing support for his family. There presently is little likelihood he will be able to support his family by returning to gainful employment. He was receiving temporary disability benefits but he always knew they would run out and this, Dr. Fleming said, merely contributed to his emotional dilemma. Without the permanent disability award, the evidence establishes there is little hope for improvement, the fact such an award may trigger subsequent improvement does not alter the fact he is at this point medically stationary in terms of the Workmen's Compensation Act. We in no way mean to imply permanent disability benefits should be awarded as a therapeutic tool for the purposes of inducing improvement sufficient to return the worker to gainful employment. We merely hold if improvement is an incidental result of the award which is otherwise proper this does not mitigate against a finding the worker is medically stationary. If claimant subsequently becomes employable, ORS 656.325 provides for modification of the permanent total award. *McCoy v. Transport Indemnity Co.,* 27 Or App 437, 556 P2d 711 (1976), Sup Ct *review denied* (1977).

Affirmed.