Argued and submitted October 24,
reversed December 31, 1979

## LOGUE,
*Petitioner,*

*v.*

## STATE ACCIDENT INSURANCE FUND,
*Respondent.*

### (WCB No. 77-6812, CA No. 14054)
607 P2d 750

J. Michael Alexander, Salem, argued the cause for petitioner. With him on the brief was Brown, Burt & Swanson, P. C., Salem.

Darrell Bewley, Associal Counsel, State Accident Insurance Fund, Salem, argued the cause for respondent. With him on the brief were K. R. Maloney, Chief Counsel, and James A. Blevins, Chief Trial Counsel, State Accident Insurance Fund, Salem.

Before Buttler, Presiding Judge, and Gillette and Roberts, Judges.

GILLETTE, J.

## GILLETTE, J.

The focal issue in this workers' compensation case is whether this claim was closed before claimant was "medically stationary." ORS 656.268 (1).[1] Claimant argues that his claim was closed prematurely and that it should be reopened. We agree.

Claimant suffered a compensable injury in 1976 when he was working in a ditch which caved in. Claimant and some pipe that he had been carrying both fell and, during the fall, the pipe hit claimant, injuring his neck and an ankle.

Despite medical treatment, claimant's neck injury persisted. The treating neurosurgeon, Dr. Harris, suspected that claimant had one or more herniated discs in his neck, although initial tests did not confirm this impression. According to Dr. Harris, the claimant could not return to his usual work as an electrician. However, Dr. Blackwell, an orthopedist who saw claimant at SAIF's request, found that claimant could return to work.

In October, 1977, the claim was closed by determination order, which did not include any award for permanent disability. Claimant challenged the order, contending, first, that the claim closure was premature and, second, that, if he was "medically stationary," then he was entitled to a permanent disability award.

The referee found that claimant was not "medically stationary" and ordered SAIF to reopen the claim. The Workers' Compensation Board reversed, holding that claim closure was appropriate. However, the Board also found that claimant was entitled to a 25 percent permanent partial disability award.

---

[1] ORS 656.268(1) provides:

"* * * Claims shall not be closed nor temporary disability compensation terminated if the worker's condition has not become medically stationary * * *"

[993]

While ORS 656.268(1), note 1, *supra,* mandates that claim closure be postponed until a claimant is "medically stationary," the term "medically stationary" was not defined in the statutes at the times relevant to this case.[2]

> "* * * The term 'medically stationary' was coined by the Supreme Court in *Dimitroff v. State Ind. Acc. Com.,* 209 Or 316, 306 P2d 398 (1957), and then was codified as part of the present Work[ers'] Compensation Act. The Supreme Court defined that term to mean '* * * when he [the injured worker] reaches the stage at which his restoration to a condition of self-support and maintenance as an able-bodied workman is found * * * on the basis of expert medical opinion to be as complete as it can be made by treatment. * * *' In this context the term has two aspects; (1) that the treatment provided has succeeded in returning the worker to the work force or (2) that further treatment will be unsuccessful in accomplishing that aim and the worker would be considered permanently disabled. The medical evidence must be analyzed and evaluated in terms of the purposes expressed in ORS 656.268(1):
>
>> "One purpose of this chapter is to restore the injured work[er] as soon as possible and as near as possible to a condition of self support and maintenance as an able-bodied work[er]. * * *'"

*Pratt v. SAIF,* 29 Or App 255, 258, 562 P2d 1242 (1977).

Here, as in many workers' compensation cases, the decision as to whether the claimant was "medically stationary" turns upon the evaluation of conflicting medical reports. SAIF relies on Dr. Blackwell's reports; the claimant relies on the reports submitted by the treating neurosurgeon, Dr. Harris.

---

[2] The 1979 Legislature amended ORS 656.005 to provide:

"(21) 'Medically stationary' means that no further material improvement would reasonably be expected from medical treatment, or the passage of time." Ch 839, 1979 Oregon Laws, § 26.

While questioning the import of the term "medically stationary,"[3] Dr. Blackwell felt that claimant could return to work and that surgery was not indicated. He believed that the claimant was hostile, uncooperative and had poor motivation. Although Dr. Blackwell may have been uncertain as to the definition of the term, his reports reflect the opinion that claimant was medically stationary.

The force of Dr. Blackwell's opinion is undercut by two factors. Dr. Blackwell's conclusion that claimant could return to work was based on his belief that claimant was exaggerating his symptoms. However, the referee found that claimant was a credible witness. *See Hannan v. Good Samaritan Hosp.,* 4 Or App 178, 192, 471 P2d 831, 476 P2d 931 (1970). In addition, Dr. Blackwell was not a treating physician; he saw claimant only twice at SAIF's request.

We agree with the referee that Dr. Harris' opinion is more persuasive. While his reports are not free from ambiguity,[4] they support claimant's assertion that he was not "medically stationary."

Before the hearing on this claim, Dr. Harris noted additional objective evidence of claimant's disability; for the first time, the physician identified left wrist weakness and muscle atrophy. He said that he planned to see the claimant again for "future treatment and evaluation." Dr. Harris emphasized that the claimant was "disabled" and that he could not return to his usual work. The doctor stated that, "[t]he healing period for [claimant's] cervical nerve and possible thoracic outlet syndrome is not completed at this time." While noting his inability "to give an estimate

---

[3] In one of his reports, Dr. Blackwell asked "[w]hat does 'medically stationary' really mean?!"

[4] Claimant returned to Arkansas following his injury. Both Dr. Blackwell and Dr. Harris practice in Arkansas and, being unfamiliar with the lexicon of Oregon workers' compensation practice, apparently experienced particular difficulty in matching their medical opinions against the statutory language.

of degree of permanent or partial disability," the doctor did estimate claimant's disability at 10 to 15 percent permanent partial[5] with "very little possibilities [*sic*] that his overall situation will improve."

The tenor of Dr. Harris's report was that the claimant was not "medically stationary." As the referee found, this claim should not have been closed.[6] The claimant's curative treatment was not complete, he had not healed, and he was not ready to return to work.

SAIF argues that we should not decide whether claimant was "medically stationary." SAIF contends that the claimant used the wrong procedure to raise this issue and that, therefore, he waived it. SAIF is wrong.

Claimant raised the issue of premature closure in his second and third requests for hearing. These

---

[5] The record indicates that SAIF was soliciting a medical report which would support claim closure. While this solicitation may have been appropriate, based on the information available to SAIF, it also may have led Dr. Harris to estimate the degree of disability despite his apparent reluctance to make that estimate.

[6] On claimant's motion, we admitted additional medical evidence as part of the record on appeal. SAIF did not file any objection. The additional evidence supports our conclusion that this claim was closed prematurely. Further tests indicated that claimant did have a herniated cervical disc, as well as spondylosis. Claimant has had a cervical decompression and fusion at C5-6 and C6-7.

We may have erred in admitting these additional medical reports. They may have been "obtainable," although not available at the time of hearing. ORS 656.298(6); *Mansfield v. Caplener Bros.,* 3 Or App 448, 452, 474 P2d 785 (1970); *Maumary v. Mayfair Markets,* 14 Or App 180, 183-184, 512 P2d 1370 (1973).

Still, there may have been "good cause" for the failure to produce the reports at the hearing. Dr. Harris did not respond to requests for an additional report. Therefore, we might have remanded the case to the referee for the taking of additional evidence. ORS 656.298(6); *Curry v. SAIF,* 28 Or App 905, 907, 562 P2d 206 (1977); *Buster v. Chase Bag Co.,* 14 Or App 323, 329-330, 513 P2d 504 (1973).

However, we need not decide whether the reports were admitted in error or if a remand for the taking of additional evidence would be appropriate. We base our conclusion that claimant was not "medically stationary" solely on the evidence admitted at the hearing.

requests were filed well within one year from the date of the determination order. ORS 656.268(5) provides that,

> "[a]ny * * * party may request a hearing under ORS 656.283 on the determination [order] * * * within one year after copies of the determination are mailed."

ORS 656.283 provides that,

> " * * * any party or the board may at any time request a hearing on any question concerning a claim."

These statutes mandate the precise procedure which claimant followed here. Within one year of its mailing, claimant challenged the determination order by contending that it was issued before he was "medically stationary." ORS 656.268(1), *supra.*

However, SAIF relies on ORS 656.268(3) which describes the procedure for issuing determination orders,[7] and then provides that,

> " * * * The Evaluation Division shall reconsider determinations made pursuant to this subsection whenever one of the parties makes request therefor and presents medical information regarding the claim that was not available at the time the original determination was made. However, *any such request for reconsideration must be made prior to the time a request for hearing is made pursuant to ORS 656.283.* The time from request for reconsideration until decision on reconsideration shall not be counted in any

---

[7] "Within 30 days after the Evaluation Division receives the medical and vocational reports relating to the disabling injury, the claim shall be examined and further compensation, including permanent disability award, if any, determined under the director's supervision. If necessary the Evaluation Division may require additional medical or other information with respect to the claim, and may postpone the determination for not more than 60 additional days. Any determination under this subsection may include necessary adjustments in compenstion paid or payable prior to the determination, including disallowance of permanent disability payments permaturely made, crediting temporary disability payments against permanent disability awards and payment of temporary disability payments which were payable but not paid. * * *"

[997]

limitation on the time allowed for requesting a hearing pursuant to ORS 656.283." (Emphasis added.)

SAIF notes that, in this case, the claimant did not ask the Evaluation Division to reconsider its determination. As SAIF reads the statutory language, emphasized above, a request for reconsideration is a prerequisite to a request for hearing on the issue of premature closure.

SAIF misreads the statute. ORS 656.268(4) does not say that a request for reconsideration is a prerequisite to a request for hearing. The statute simply states that, if a request for reconsideration is made, it must be made before the request for hearing. This provision avoids contemporaneous, redundant reviews of a determination order. The Evaluation Division is distinct from the Hearings Division. The Evaluation Division has the responsibility for initially evaluating claims and issuing determination orders. ORS 656.708(2). The Hearings Division has the responsibility for conducting hearings and deciding all cases. ORS 656.708(3).

The claimant did not waive the issue of premature closure by failing to ask the Evaluation Division to reconsider its determination.

Reversed and remanded.