Argued and submitted October 30, 1981, reversed;
referee's order reinstated June 9, 1982

In the Matter of the Compensation of
Roy F. Holub, Claimant.

HOLUB,
*Petitioner,*

*v.*

STATE ACCIDENT INSURANCE FUND
CORPORATION,
*Respondent.*

(No. 79-04003, CA A21445)

646 P2d 105

J. Davis Walker, Forest Grove, argued the cause for petitioner. With him on the brief was Bump, Young & Walker, Forest Grove.

Darrell E. Bewley, Appellate Counsel, SAIF, Salem, argued the cause and filed the brief for respondent.

Before Joseph, Chief Judge, and Warden and Warren, Judges.

JOSEPH, C. J.

## JOSEPH, C. J.

The issue in this workers' compensation case is the extent of unscheduled disability from a head injury. By the determination order claimant was awarded 10 percent disability; after a hearing the referee awarded 60 percent; the Workers' Compensation Board reduced the award to 30 percent. Claimant appeals.

Claimant is 41 years old, has a tenth grade education and has been a butcher and meatcutter nearly all of his working life. On December 2, 1977, while hoisting a live hog for slaughter, he was knocked unconscious when struck on the head by a 40 or 45 pound metal shackle that had fallen about 18 feet from above. He was admitted to the hospital for observation and released in good condition. He subsequently began suffering unsteadiness, difficulty in concentration, bi-temporal headaches and tinnitus. One day in February, 1978, he blacked out while driving his pickup and again while sitting in a tow truck. He was readmitted to the hospital and diagnosed to have a subdural hematoma. On March 10, 1978, a craniotomy was performed to remove it. He nevertheless continued to suffer right-sided headaches, "pins and needles" in his left arm, hand and leg, numbness in his left leg, intermittent clumsiness and episodes of fainting. Dr. Grimm, his treating neurologist, reported on November 27, 1979, that claimant's "problems continue and are possibly worsening." On March 4, 1980, the doctor reported that an EEG demonstrated a change for the worse caused by scarring following the craniotomy. He said the scarring was also responsible for epileptic seizures that claimant suffered every three to four weeks.

Claimant testified that, after his injury, he was unable to function at work because his headaches caused dizzy spells that made operation of the butcher saws unsafe. He said that he suffered blackout spells, his left leg would become numb from standing and he could not stand up for eight hours a day. He noted also that his emotional character had changed so that he became irritable and easily upset and had difficulty getting along with his fellow

employes and his family.[1] He said that he suffers from a constant headache and cannot read because of blurred vision.

In January, 1979, claimant suffered an occupational disease of the right forearm, caused by "prolonged arm movement while on the kill floor." He developed similar problems in his left wrist. He was diagnosed to have a carpal tunnel syndrome and severe degenerative joint disease in both wrists. The treating physician recommended that claimant obtain employment other than butchering, which strains the wrists. By a determination order, claimant received an award of 35 percent loss of the right forearm. No claim is made that that occupational disease is related to claimant's head injury.

In rejecting the referee's award of 60 percent for his head injury, the Board considered the "impairment ratings" of treating physicians made *before* claimant's condition was stable. It relied on a May, 1978, report of a Dr. Nash, which stated that claimant's impairment was "mild to moderate," and Dr. Grimm's July 3, 1979, report, which stated that

"* * * the patient's present medical condition with respect to that head injury and impairment from this source alone would have to be minimal and has not changed since after his surgery in March of 1978."

Sole reliance on these reports overlooked Dr. Grimm's *subsequent* reports that claimant's condition had worsened.

The Board also rejected the referee's award because:

"The evidence before the Board and the Referee does not contain any information about claimant's working restrictions or if he can return to his work as a butcher. Basically the seizures are controlled by medication, but because of the potential of having a seizure, claimant's regular occupation may now be precluded to him. Claimant was already precluded, based in the medicals, from that occupation due to his right forearm and left wrist

---

[1] Claimant cried when he described these changes at the hearing. In a January 10, 1978, letter, Dr. Grimm stated that personality changes can develop within six to twelve months after a concussion injury.

problems. There is no information about restrictions on claimant from the head injury, except a comment that he can walk, stand, sit and and drive a car."

However, in his March, 1980, report, Dr. Grimm stated:

"It is my opinion that the head injury * * * not only set up this epileptic focus which now requires medical therapy but has limited the fine coordination of the left side of the body which precludes certain activities.

"An exact definition of this deficit cannot be made because of the [occupational disease injury to the wrists.]

"There is no question that the head injury itself has diminished this man's motor skills in various ways but that it does not preclude sitting, standing, walking or driving a car."

We find that this evidence, with claimant's testimony as to his condition, shows that claimant suffered a permanent loss of earning capacity because of the head injury to an extent of 60 percent. The fact that his subsequent occupational disease prevented him from continuing his job as a butcher does not preclude a determination that his head injury was severely disabling. The referee found claimant's testimony as to the extent of his disability believable. It was also probative. *Dimitroff v. State Ind. Acc. Com.*, 209 Or 316, 330, 306 P2d 398 (1957).

The order of the Board is reversed, and the order of the referee is reinstated.