Argued and submitted April 21, affirmed September 15, 1982

In the Matter of the Compensation of
Carroll Paine, Claimant.

## PAINE,
*Petitioner,*

*v.*

## WIDING TRANSPORTATION,
*Respondent.*

(No. 80-06329, CA A22657)

650 P2d 968

Robert L. Burns, Gresham, argued the cause and filed the brief for petitioner.

Emil R. Berg, Portland, argued the cause for respondent. With him on the brief was Wolf, Griffith, Bittner, Abbott & Roberts, Portland.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Claimant appeals the order of the Workers' Compensation Board holding that closure of his claim was proper and awarding permanent partial disability. Claimant argues that his claim was prematurely closed before his condition became medically stationary and that, if closure was proper, he is entitled to permanent total disability. The referee held that the claim was properly closed and that claimant was entitled to 30 percent unscheduled permanent partial disability. On appeal, the Board reduced the award to 20 percent and otherwise affirmed. We review *de novo,* ORS 656.298(6), and affirm.

At the time of his injury in October, 1979, claimant was a 55 year old heavy-haul truck driver. He twisted his back when he slipped getting into his truck. After seeing his family physician, he was referred to Dr. Goodwin, an orthopedist, who diagnosed an acute lumbar strain and a possible extruded disc. Dr. Goodwin treated claimant conservatively with local heat, physical therapy, exercise and analgesics. Dr. Goodwin referred claimant to Dr. Cruickshank, a neurologist, for a second opinion. Dr. Cruickshank diagnosed acute lower back sprain but not an extruded disc, and he advised against surgery.

In April, 1980, the employer's insurance carrier referred claimant to Dr. Langston. After examining claimant, Dr. Langston reported:

"* * * It is the opinion of this examiner that this man is now stationary for any further medical treatment. I would recommend closure of his claim. He may return to his previous occupation without limitations. I would evaluate his disability as a result of this accident to be minimal and as it exists today to be minimal. He also may engage in some other type of occupation similar to truck driving without limitations. He does not need psychological evaluation. He does not need referral to a pain clinic."

The insurance carrier asked Dr. Goodwin to respond to Dr. Langston's report. Dr. Goodwin wrote that he "generally" concurred with Dr. Langston. On this basis, a determination order was issued closing the claim and awarding temporary total disability benefits for the period from the date of injury until May 10, 1980.

Dr. Goodwin again examined claimant after the determination order was issued. His report reiterated his diagnosis of an extruded disc but that the lack of a concurring second opinion prevented surgical treatment. He advised claimant that conservative treatment should be continued and that, notwithstanding claimant's lack of response to this treatment, he had little more to offer. He also stated, concerning claimant's work status, that

"* * * if his employer could find him a job, which he could do without heavy lifting, long periods of sitting, or a job that he could tolerate, then of course the patient could return to limited duty. Otherwise, the patient is at a stand still, and would not be considered eligible to return to his regular duty."

In July, 1980, Dr. Smith, a neurologist, performed a myelogram on claimant at Dr. Goodwin's request. His conclusion was that the myelogram was "normal."

Dr. Goodwin again examined claimant in September, 1980. He reported that claimant's symptoms "are not materially changed" and recommended that claimant be enrolled in physical conditioning or retraining programs. Later in September claimant was examined by a panel of physicians at Orthopaedic Consultants. Their report concluded:

"It is our opinion, after this examination today, that this patient's condition is medically stationary. We do not feel that we can recommend any surgery which would be expected to improve him. He has probably reached a maximum improvement from this last injury, at this time. He could not return to the same occupation without limitation, but he could return with limitations on heavy lifting. He should be able to change position frequently so that he is not required to sit in one position for prolonged periods of time.

"The patient will probably need vocational assistance to get some sort of job which he can carry out.

"It is the opinion of the examining panel that the total loss of function of the lower back, as it exists today, is in the mild category, and due to this injury in the minimal category. We do not feel that the patient has any permanent loss of function in the leg."

In December, 1980, claimant was evaluated at the Workers' Compensation Department's Callahan Center. The interviewing psychologist reported that claimant has "excellent intellectual capabilities and aptitudes in order to entertain an alternative vocational direction" but that he was depressed and anxious because of his inability to work.

■ Claimant argues on appeal, as he did before the referee and the Board, that his claim was prematurely closed by the May, 1980, determination order.[1] He relies on ORS 656.268(2), which provides:

> "When the injured worker's condition resulting from a disabling injury has become medically stationary, unless the injured worker is enrolled and actively engaged in an authorized program of vocational rehabilitation, the insurer or self-insured employer shall so notify the Evaluation Division, the worker, and employer, if any, and request the claim be examined and further compensation, if any, be determined. A copy of all medical reports and reports of vocational rehabilitation agencies or counselors shall be furnished to the Evaluation Division and to the worker and to the employer, if requested by such worker or employer. *If the attending physician has not approved the worker's return to the worker's regular employment, the insurer or self-insured employer must continue to make temporary total disability payments until termination of such payments is authorized following examination of the medical reports submitted to the Evaluation Division under this section.*" (Emphasis added.)[2]

Because the claim was closed in May, 1980, the Evaluation Division obviously did not consider medical reports submitted after closure. At no time did Dr. Goodwin, the attending physician, approve claimant's return to regular employment. Therefore, claimant argues, absent Dr. Goodwin's

---

[1] Improper or premature closure of the claim may subject the insurance carrier to statutory penalties. ORS 656.262(9) provides:

> "If the insurer or self-insured employer unreasonably delays or unreasonably refuses to pay compensation, or unreasonably delays acceptance or denial of a claim, the insurer or self-insured employer shall be liable for an additional amount up to 25 percent of the amounts then due plus any attorney fees which may be assessed under ORS 656.382."

[2] ORS 656.268(2) was amended by Or Laws 1981, ch 535, § 7a; ch 854, § 19; ch 874, § 13. These amendments do not materially alter the version of the statute in force when the claim arose.

approval of his return to work, the claim could not properly be closed until those reports subsequent to May 10 were submitted to and examined by the Evaluation Division.

■ ■   The employer's insurance carrier properly followed the statutory procedure on the basis of all medical reports *then* in existence, including Dr. Goodwin's general concurrence that closure was appropriate. Dr. Goodwin's approval of claimant's return to regular employment bears only on the need for a determination order to close the claim. Had claimant been allowed to return to work earlier, then the insurance carrier could have terminated payment of benefits earlier, without a determination order. Here, claimant was not released to return to work, so payments continued until termination was authorized by the determination order.

■ ■   Following closure of the claim, the subsequent medical reports do not indicate that the claim should have been reopened or should have remained open. The key issue is not whether claimant was released to return to his regular employment, but whether claimant's condition was "medically stationary."[3] The evidence indicates that his condition was medically stationary both at the time of and subsequent to the issuance of the determination order. In September, 1980, Dr. Goodwin concluded that claimant's symptoms "are not materially changed," and Orthopaedic Consultants specifically stated that claimant's condition is medically stationary.

Claimant's situation differs from that in *Brown v. Jeld-Wen, Inc.*, 52 Or App 191, 627 P2d 1291 (1981), in which we held that the claim was prematurely closed. In that case, the attending physician initially agreed that the claim should be closed, but shortly thereafter the claimant was rehospitalized for further treatment. The determination order was issued without knowledge of the hospitalization but at a time when the claimant's condition was not

---

[3] ORS 656.005(17) provides:

" 'Medically stationary' means that no further material improvement would reasonably be expected from medical treatment, or the passage of time."

See *Dimitroff v. State Ind. Acc. Com.*, 209 Or 316, 306 P2d 398 (1957); *Pratt v. SAIF*, 29 Or App 255, 562 P2d 1242 (1977).

medically stationary. Therefore, closure was premature. In the present case, claimant's condition was medically stationary, and closure was proper.

Claimant also argues that the extent of his disability entitles him to an award of permanent total disability benefits. He contends that the Board placed undue emphasis on his activities, such as using a chainsaw to cut firewood, carrying firewood into his home, mowing his lawn, pruning his trees and panning for gold on a one-time, two-day trip. It does not appear that the Board excluded from consideration claimant's testimony of the extent of his pain and its effect on his activity. The medical evidence indicates that his disability is "minimal" and that he has "excellent intellectual capabilities and aptitudes."

■ ■ After reviewing the record, we conclude that claimant has not met his burden of establishing that his injury resulted in a permanent total disability. *See Morris v. Denny's,* 50 Or App 533, 623 P2d 1118, *clarified* 53 Or App 863, 633 P2d 827 (1981). In determining the extent of partial disability, we generally defer to the Workers' Compensation Board. *Owen v. SAIF,* 33 Or App 385, 576 P2d 821 (1978). However, "[w]here the degree fixed by the Board is not within a range which we deem appropriate under the facts of the case, then our duty to review de novo requires us to make a determination within the range which we believe to be justified." 33 Or App at 388. In this case the 20 percent disability determined by the Board is within the range appropriate under the facts of this case.

Affirmed.